# Exhibit A

James E. Cecchi (JC 7697)
Jeffrey A. Cooper (JC 0763)
Lindsey H. Taylor (LT 7234)
CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
Attorneys for Third-Party Defendants
GEORGE VIEIRA, CALIFORNIA MILK MARKET,
and WEST COAST COMMODITIES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH P. SILVERMAN, ESQ., the Chapter 7 Trustee of the Estate of Suprema Specialties, Inc., Suprema Specialties West, Inc., Suprema Specialties Northeast, Inc., and Suprema Specialties Northwest, Inc.,<br><br>                    Plaintiff,<br>-against-<br><br>BDO SEIDMAN, LLP,<br><br>                    Defendant | Docket No. M-47-B |
| BDO SEIDMAN, LLP,<br><br>                    Third-Party Plaintiff,<br>-against-<br><br>MARK COCCHIOLA, STEVEN VENECHANOS, ARTHUR CHRISTENSEN, ANNE COCCHIOLA, JOHN VAN SICKELL, GEORGE VIEIRA, ROBERT QUATTRONE, LAWRENCE FRANSEN, BATTAGLIA & COMPANY, PACKING PRODUCTS COMPANY, INC., VILLA D'ESTE IMPORTING, INC., CALIFORNIA MILK MARKET, INC., WEST COAST COMMODITIES, INC., LNN ENTERPRISES, INC. and WALL STREET CHEESE, LLC<br><br>                    Third-Party Defendants | **OBJECTION OF THIRD-PARTY DEFENDANTS GEORGE VIEIRA, CALIFORNIA MILK MARKET AND WEST COAST COMMODITIES TO BANKRUPTCY COURT'S PROPOSED FINDINGS REGARDING BDO SEIDMAN'S MOTION TO DISMISS FOR FAILURE TO SERVE AN AFFIDAVIT OF MERIT** |

# TABLE OF CONTENTS

Table Of Authorities ................................................................................................. ii

Statement Of The Case ............................................................................................. 1

    a)      Procedural background .................................................................... 1

    b)      The alleged "round-tripping" scheme .......................................... 3

Legal Argument ....................................................................................................... 6

    a)      This is a non-core proceeding in the Bankruptcy Court .................. 6

    b)      New Jersey's Affidavit of Merit Statute .......................................... 7

    c)      The BDO Engagement Letter Does Not
             Provide For The Application of New York Substantive Law.......................... 8

    d)      New York's Choice of Law Rules Require The Application of
             New Jersey's Affidavit of Merit Statute ............................................ 11

    e)      New Jersey's Affidavit of Merit Statute Is A Substantive Rule
             Applicable In Federal Court.......................................................... 13

    f)      The Trustee Has Not Complied With The Affidavit of Merit Statute .............. 15

Conclusion ............................................................................................................ 25

## TABLE OF AUTHORITIES

### Cases

*Albany Savings Bank v. Halpin*, 117 F.3d 669 (2d Cir. 1997) ..................................................... 8

*Biotti v. CNA Insurance Co.*, 361 N.J.Super. 217 (App.Div. 2003) ............................................. 8

*Browning v. Levy*, 283 F.3d 761(6th Cir. 2002) ......................................................................... 6

*Bruce v. Barcomb*, 675 So.2d 219 (Fla. 2d DCA 1996) ............................................................. 11

*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000) ..................................................... passim

*Cornblatt v. Barow*, 153 N.J. 218 (1998) ................................................................................. 15

*Cruz-Mendez v. ISU/Insurance Services*, 156 N.J. 556 (1999) ................................................... 8

*Diamond Mortgage Corporation of Illinois v. Sugar*, 913 F.2d 1233(7th Cir. 1990) ................... 6

*Emerson Radio v. Orion Sales, Inc.*, 253 F.3d 159 (3d Cir. 2001) ............................................... 8

*Ferreira v. Rancocas Orthopedic*, 178 N.J. 144 (2003) ........................................................ passim

*Galik v. Clara Maas Medical Center*, 167 N.J. 341 (2001) ................................................. 15, 17

*Hubbard ex rel. Hubbard v. Reed*, 168 N.J. 387 (2001) ............................................................ 20

*Hyman Zamft and Manard v. Cornell*, 309 N.J.Super. 586 (App.Div. 1998) ............................. 18

*In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001) ................................................................... 11

*In re Green*, 200 B.R. 296 (S.D.N.Y. 1996) ............................................................................... 6

*In re United States Lines*, 197 F.3d 631, 636-38 (2d Cir. 1999) ................................................ 6

*Indosuez International Finance B.V. v. National Reserve Bank*,
  98 N.Y.2d 238, 744 N.E.2d 696, 746 N.Y.S.2d 631 (2002) ................................................... 11

*McCord v. Papantoniou*, 316 B.R. 113 (E.D.N.Y. 2004) ............................................................ 6

*Palanque v. Lambert-Wooley*, 168 N.J. 398 (2001) ............................................................. 16, 17

*Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152 (2d Cir. 2003) ........................ 8

*Radioactive v. Manson*, 153 F.Supp.2d 462 (S.D.N.Y. 2001) ..................................................... 9

*Record Club of America, Inc. v. United Artists Records, Inc.* 890 F.2d 1264 (2d Cir. 1989) ........ 8

*RTC Mortgage Trust 1994 v. Fidelity National Title Insurance Co.*,
  981 F.Supp. 334 (D.N.J. 1997) ............................................................................................ 14

*Serocki v. Meritcare Health System*, 312 F.Supp.2d 1201 (D.S.D. 2004) ............................ 21, 22

*Smith v. Planned Parenthood of the St. Louis Region*, 225 F.R.D. 233 (E.D.Mo. 2004) ............. 22

*Snyder v. Pascack Valley Hospital*, 303 F.3d 271 (3d Cir. 2002) .................................. 14, 20, 21

*Taylor v. Plousis*, 101 F.Supp.2d 255 (D.N.J. 2000) ................................................................. 18

*Velazquez v. UPMC Bedford Memorial Hospital*, 328 F.Supp.2d 549 (W.D.Pa. 2004) .............. 14

*W.B. v. Mantula*, 67 F.3d 484 (3d Cir. 1995) ............................................................................. 8

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) ................................................................... 22

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635 (S.D.N.Y. 1996) .......... 6

*Woodling v. Garrett*, 813 F.2d 543 (2d Cir. 1987) ..................................................................... 9

### Statutes

11 U.S.C. § 157(c)(1) ................................................................................................................. 6

28 U.S.C. § 157(b) ..................................................................................................................... 6

28 U.S.C. § 157(b)(2) ................................................................................................................. 6

28 U.S.C. § 1746 ...................................................................................................................... 15

N.D.Cent.Code § 28-01-46 ....................................................................................................... 21

N.J.S.A. 2A:53A-26(a) .............................................................................................................. 7

N.J.S.A. 2A:53A-27 ............................................................................................................ passim

N.J.S.A. 2A:53A-29 ................................................................................................................... 7

ii

**Other Authorities**

Restatement of Conflict of Laws 2d, § 6, *Comment i.* ................................................. 23

**Rules**

F.R.Civ.P. 14(a) ................................................................................................................ 3
F.R.Civ.P. 26 ................................................................................................................... 22
N.J. Rule 1:4-4(b) ........................................................................................................... 15

Third-Party Defendants George Vieira, West Coast Commodities, Inc. ("WCC") and California Milk Market, Inc. ("CMM") (together the "Vieira Defendants"), by and through the undersigned counsel, objects to the proposed findings of fact and conclusions of law of the Bankruptcy Court denying the motion of Defendant BDO Seidman to dismiss Plaintiff's complaint for failure to serve an affidavit of merit on the following bases:

## STATEMENT OF THE CASE

a)      **Procedural background**

This adversary proceeding arises out of the collapse of Suprema Specialties, Inc. ("Suprema"), which was at one time purported to be the fastest growing cheese company in the U.S. Suprema was a publicly traded New York corporation headquartered in Paterson, New Jersey. In late 2001, Suprema's top financial officers resigned and trading of its stock was immediately halted. In January 2002, federal and New Jersey state authorities raided Suprema's offices in Paterson pursuant to search warrants and seized most of Suprema's books and records. Subsequent investigations revealed that a substantial portion of Suprema's sales were actually non-existent.[1] This bankruptcy was filed on February 24, 2002 as a Chapter 11 reorganization. On March 20, 2002, the bankruptcy was converted to Chapter 7 and Plaintiff was appointed at Trustee.

---

[1]      The investigation being conducted by New Jersey offices of FBI and the U.S. Attorney is still ongoing. On January 7, 2004, third-party defendants John Van Sickell, the operations manager at Suprema's New Jersey plant, and Robert Quattrone, Lawrence Franzen and George Vieira, the principals of three of Suprema's customers, pleaded guilty to conspiracy and securities fraud charges in the District of New Jersey. Van Sickell also pleaded guilty to charges to introducing adulterated foods into interstate commerce. Mr. Vieira is cooperating with the federal investigation. On March 2, 2005, Jack Gaglio, the principal of some of Suprema's largest customers also pleaded guilty to conspiracy and securities fraud charges in the District of New Jersey, admitting to participating in approximately $350 million worth of false sales.

Defendant BDO Seidman ("BDO") was Suprema's independent auditor. In this adversary proceeding, the Suprema's Bankruptcy Trustee claims that BDO negligently performed its audits and, as a result, failed to uncover the fraud allegedly perpetrated by Suprema's management. The Trustee seeks damages of $175 million.[2] BDO, in turn, filed third-party claims for contribution and/or indemnity against the third-party defendants, who were Suprema's top management and customers of Suprema allegedly engaged in the fraud.

BDO filed the instant motion to dismiss the Trustee's claims because the Trustee failed to serve an affidavit of merit as required by N.J.S.A. 2A:53A-27. The Bankruptcy Court recommended that BDO's motion be denied, finding that New Jersey's affidavit of merit statute was inapplicable because New York law, rather than New Jersey law, was applicable to the Trustee's malpractice claims against BDO. The Viera Defendants object to that recommendation, since if the claims against BDO should be dismissed, dismissal of the Third-Party Complaint must inevitably follow. If BDO cannot be liable to the Trustee, the third-party

---

[2]     The Trustee has also filed separate adversary proceedings against each of the alleged participants in the "round tripping" scheme, seeking to recover the same $175 million. Those adversary proceedings are: *Silverman v. LNN Enterprises*, Adv.Pro.No. 04-01074; *Silverman v. California Milk Market*, Adv.Pro.No. 04-01075; *Silverman v. Packing Products, Inc.*, Adv.Pro.No. 04-01076; *Silverman v. West Coast Commodities*, 04-01086; *Silverman v. Wall Street Cheese*; Adv.Pro.No. 04-01087; *Silverman v. Cocchiola*, Adv.Pro.No. 04-01090; *Silverman v. Anne Cocchiola*, 04-01092; *Silverman v. Steven Venechanos*, Adv.Pro.No. 04-01097; *Silverman v. Battaglia & Co., Inc.*, Adv.Pro.No. 04-01460; *Silverman v. Central Valley Dairymen*, Adv.Pro.No. 04-01072; *Silverman v. Commodity Distribution, Inc.*, Adv.Pro.No. 04-01073; *Silverman v. Cal Federal Marketing, Inc.*, Adv.Pro.No. 04-01077; *Silverman v. Hidden Villa Ranch*, Adv.Pro.No. 04-01078; *Silverman v. Noram Commodities*, Adv.Pro.No. 04-01079; *Silverman v. St. Charles Trading, Inc.*, Adv.Pro.No. 04-01080; *Silverman v. Noble J.G.Cheese*, Adv.Pro.No. 04-01085; *Silverman v. A&J Cheese*, Adv.Pro.No. 04-01088; *Silverman v. California Goldfield Cheese Trading, LLC*, Adv.Pro.No. 04-01457; *Silverman v. Tricon Commodities International*, Adv.Pro.No. 04-02035; *Silverman v. Gourmet Italia Importa, Inc.*, Adv.Pro.No. 04-02344; and *Silverman v. Garnett Foods, Inc.*, Adv.Pro.No. 04-02355. BDO and the Vieira Defendants moved to consolidate all of these actions with this one. The Bankruptcy Court carried that motion pending a determination by this Court of BDO's motion to dismiss. (Tr. p. 107, l. 3-9).

defendants *ipso facto* could not be "liable to [BDO] for all or part of the [Trustee's] claim against [BDO]."  *See* F.R.Civ.P. 14(a).

**b)**     **The alleged "round-tripping" scheme**

From 1996 through 2002, Suprema's reported sales grew by approximately 700%.  As its business grew, Suprema increased the limit on its line of credit with its lenders.  The loans from its banks were secured by, *inter alia*, Suprema's inventory and accounts receivable.  It is alleged, however, that up to 90% of Suprema's sales were non-existent.  Those non-existent sales were allegedly the result of "round-tripping" transactions with customers. In the alleged round-tripping scheme, Suprema supposedly would arrange with a customer or supplier to create paperwork, and make payments for a non-existent sale, then the money, less a small "commission" would be returned to Suprema through a second non-existent transaction with the customer or supplier.  For example, Suprema would "buy" $100 worth of non-existent milk from Customer X, pay Customer X $100, then Customer X would "buy" $99 worth of non-existent cheese from Suprema and pay that amount.  Suprema would then show the $100 worth of "inventory" and the $99 "sale" on its books as an account receivable and, apparently, would borrow from the Banks against both.[3]

The audits performed by BDO were run out of BDO's Woodbridge, New Jersey office and performed primarily at Suprema's Paterson, New Jersey headquarters by New Jersey licensed accountants.  All of the written reports related to the audits were produced in BDO's Woodbridge office.  (Aff. of Tucci, ¶¶ 5-10). In his complaint, the Trustee alleges that BDO

---

[3]     One fact which has not yet come to light in the investigation, or at least has not been made public by either the U.S. Attorney or the Trustee, is what happened to the money that was borrowed from the banks.  It is unknown whether the money was misappropriated by members of Suprema's inside management, was used in the ordinary course of Suprema's operations, or was otherwise disposed of.  The only thing that is known is that the money is gone.

negligently failed to uncover these "round tripping" transactions. Had BDO exercised proper diligence, the Trustee claims, it would have discovered the fraud, reported its findings to Suprema's independent audit committee, and the audit committee would have put a stop to the scheme. BDO's third-party complaint alleges that it is entitled to contribution and/or indemnity from the third-party defendants because, BDO claims, they provided false information and documents to BDO as part of its audit process to cover up the "round-tripping" scheme.

In its motion, BDO argues that since the alleged malpractice occurred as a result of New Jersey accountants performing services in New Jersey, New Jersey law should apply. New Jersey's affidavit of merit statute, N.J.S.A. 2A:53A-27, requires that in any case involving professional malpractice, the plaintiff is required to obtain and serve an affidavit of merit from a licensed expert in the appropriate field that the plaintiff's claim is meritorious. If no such affidavit is filed within the time provided by the statute, the complaint is subject to dismissal with prejudice for failure to state a cause of action.

The Trustee argues, however, that New York law applies and, since New York law applies, it had no obligation to serve an affidavit of merit. The Trustee claimed that a choice of law provision in a dispute resolution addendum to BDO's engagement letter, which called for all disputes regarding the performance or interpretation of the parties agreement to be resolved by arbitration in accordance with New York law, requires that New York substantive law be applied to its malpractice claims. According to the Trustee, the language in the engagement letter was ambiguous, so it must be construed in its favor so that New York substantive law should be applied. In addition, or in the alternative, the Trustee argues that since BDO had contacts with New York, New York substantive law should apply to its claims.

The decision in the Bankruptcy Court turned on the whether New Jersey law or New York law applies to the Trustee's claim, since, as the Bankruptcy Court noted, "If I decide that New Jersey was the choice of law, I think they've got you cold if you didn't file an affidavit." (Tr. p. 62, l. 6-8).[4]    The Bankruptcy Court found that New York law should apply, without specifying the basis.    That proposed finding is erroneous.    New Jersey law applies to the Trustee's claims and, as a result, the Trustee's claims should be dismissed because he failed to serve an affidavit of merit or substantially comply with the affidavit of merit statute.

---

[4]    The Bankruptcy Court "so ordered" the transcript of the hearing on BDO's motion on March 23, 2005.  On March 29, 2005, the Bankruptcy Court signed a written report and recommendation that BDO's motion should be denied, and also signed an Order denying BDO's motion.  The Bankruptcy Court had no jurisdiction to enter the Order, since this is a non-core proceeding, in which it only has the power to make a report and recommendation to the District Court.

## LEGAL ARGUMENT

**a)**    <u>**This is a non-core proceeding in the Bankruptcy Court**</u>

Pursuant to 28 U.S.C. § 157(b), bankruptcy judges have jurisdiction to enter final orders in "all cases under title 11 and all core proceedings arising under title 11". However, in non-core proceedings, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the District Court and, after *de novo* review of those findings and consideration of any objections, the District Court would enter a final order. 11 U.S.C. § 157(c)(1).

Examples of core proceedings are listed in 28 U.S.C. § 157(b)(2). Generally, core proceedings are those which involve a substantive right created by the Bankruptcy Code or claims which would not exist outside bankruptcy. *See In re United States Lines*, 197 F.3d 631, 636-38 (2d Cir. 1999); *In re Green*, 200 B.R. 296, 298 (S.D.N.Y. 1996); *McCord v. Papantoniou*, 316 B.R. 113, 119 (E.D.N.Y. 2004). A claim asserted by or on behalf of the debtor for pre-petition professional malpractice is a non-core proceeding. *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002)(legal malpractice); *Diamond Mortgage Corporation of Illinois v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990)(legal malpractice); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996)(legal malpractice).

Here, the Bankruptcy Court correctly found that the Trustee's claims against BDO were non-core, since they involve a claim for pre-petition professional malpractice. Since this is a non-core proceeding, the Bankruptcy Court was required, as it did, to submit proposed findings of fact and conclusions of law to the District Court for *de novo* review in accordance with 11 U.S.C. § 157(c)(1). For the reasons that follow, the Vieira Defendants object to the Bankruptcy Court's proposed findings and conclusions.

b)    <u>New Jersey's Affidavit of Merit Statute</u>

New Jersey's affidavit of merit statute, N.J.S.A. 2A:53A-27, requires that a plaintiff in a claim for malpractice or negligence against a licensed person to provide to each defendant an affidavit "of an appropriate licensed person[5] that there exists reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices".    Any plaintiff asserting a professional malpractice claim within the statute must provide the defendant with an affidavit of merit within 60 days after the defendants file an answer, and the court may give an extension of up to an additional 60 days upon a finding of good cause.  *Id.*  If a plaintiff fails to provide an affidavit if merit, "it shall be deemed a failure to state a cause of action."  N.J.S.A. 2A:53A-29.

Here, the Trustee did not provide BDO with an affidavit of merit within 120 days after BDO answered its complaint, as required by the statute.  As a result, under the terms of the statute, the Trustee's Complaint must be dismissed with prejudice.  The Trustee contends, however, that New York law substantive law should apply to its claims, so he was not required to serve an affidavit of merit.  It further argues that, even if New Jersey law applies, he has demonstrated extraordinary circumstances which would excuse his failure to provide an affidavit of merit and/or he substantially complied with the terms of the statute.  Those arguments are *seriatum*.  In summary, New Jersey, not New York law applies to the Trustee's malpractice claims.  The Trustee has not demonstrated extraordinary circumstances, nor did he substantially comply with the affidavit of merit statute.  As a result, his complaint should be dismissed.

---

[5]    A "licensed person" includes accountants.   N.J.S.A. 2A:53A-26(a).   There is no exception in the statute, at the Trustee argued before the Bankruptcy Court, for national accounting firms such as BDO.

**c)**    **The BDO Engagement Letter Does Not**
      <u>**Provide For The Application of New York Substantive Law**</u>

The Bankruptcy Court held that New York law applied to the Trustee's claims against BDO, but it did not specify as to which basis advanced by the Trustee supported this decision, the choice of law provision in BDO's engagement letters or the application of New York choice of law principles.   Regardless of the basis of the Bankruptcy Court's decision, it was incorrect. New Jersey law should have been applied.

The interpretation of a contract is a question of law for the Court. *W.B. v. Mantula*, 67 F.3d 484, 497 (3d Cir. 1995).   When interpreting a contract, the goal is to ascertain the intention of the parties as revealed by the language used, taken as an entirety, the situation of the parties, the attendant circumstances and the objects they were striving to obtain.    *Cruz-Mendez v. ISU/Insurance Services*, 156 N.J. 556, 570-71 (1999) .    This interpretation includes the determination of whether the contract is ambiguous.    *W.B.*, *id.*   If the contract is capable of only one reasonable interpretation, it is unambiguous.    *Emerson Radio v. Orion Sales, Inc.*, 253 F.3d 159, 163-64 (3d Cir. 2001).    Contract language is not rendered ambiguous by competing interpretations of it urged in the litigation.    *Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003).    Ambiguities in a contract should be construed against the drafter, but this rule is applied only after all attempts to ascertain the parties intentions have failed. *See Biotti v. CNA Insurance Co.*, 361 N.J.Super. 217, 225 (App.Div. 2003)(rule that ambiguous contract should be construed against drafter "should not be used as an excuse to read into a private agreement that which is not there, and that which people dealing fairly with each other could not have intended"). *Accord Albany Savings Bank v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997); *Record Club of America, Inc. v. United Artists Records, Inc.* 890 F.2d 1264, 1271 (2d Cir. 1989).

The "choice of law" language in issue is contained in a dispute resolution addendum to section in BDO's engagement letters. It provides, in pertinent part:

> If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association.

(Aff. of Anthony Acampora, Exs. 1-4). Plainly, the language in question is meant to apply only New York procedural law and AAA procedural rules with respect to arbitration. Taking this language in isolation, the language references the procedure which is to be applied to resolution of disputes, not the substantive law. This interpretation is even more clear when the language is viewed in context. This "choice of law" provision appears in a dispute resolution addendum, not in the body of the engagement letter itself. There is nothing in any of BDO's engagement letters which states that New York substantive law was to be applied with respect to the services rendered, or with respect to the interpretation or performance of the contract. *Compare, e.g., Woodling v. Garrett*, 813 F.2d 543, 551 (2d Cir. 1987)("The validity, effect and enforceability, as well as the rights of the parties hereto regarding this Release shall be governed, construed and interpreted solely in accordance with the laws of the State of Connecticut."); *Radioactive v. Manson*, 153 F.Supp.2d 462, 466 n. 1 (S.D.N.Y. 2001)("This agreement has been entered into in the State of New York. The validity, interpretation and legal effect of this agreement is governed by the laws of New York applicable to contracts entered into and performed entirely within such State").

In the Bankruptcy Court, the Trustee argued that the foregoing provision in BDO's engagement letter was ambiguous, should be construed against BDO, and, therefore it should win. The Trustee cannot simply label a contractual provision as "ambiguous" and declare

victory.  The Trustee has never suggested an alternative reasonable construction of the language.  The only construction which was suggested was that set forth above and the Bankruptcy Court did not make a finding that the engagement letter was ambiguous.  There was nothing in the record which would suggest that the engagement letter meant anything other than what BDO suggests that it means.  Even if the engagement letter were ambiguous, which it is not, the Trustee does not automatically win.  The Court would still need to determine the intent of the parties, based upon the language of the agreement, the surrounding circumstances, and any parol evidence regarding what the parties (not the Trustee)[6] understood the provision to mean.  If a determination could not be made based upon that evidence, only then could the Court fall back on the axiom that an ambiguous contract should be construed against its drafter.

The Trustee has emphasized the numerous contacts BDO has with New York as to why the BDO engagement letter should be construed in accordance with New York law.  Those contacts would certainly be relevant to whether there is personal jurisdiction, and are to be considered with respect to ordinary choice-of-law analysis, but they are irrelevant to the interpretation of the language of the engagement letters.  That language does not on its face provide that the substantive law of New York is to apply to tort claims by, or on behalf of, Suprema against BDO, nor can it reasonably be read to so provide.  As a result, BDO's

---

[6]    The Trustee's counsel, and accountant offer their opinion that BDO's engagement letter requires that New York substantive law applies to the Trustee's claims.  (*See* Aff. of Acampora, ¶¶ 3-4; Aff. of Serotta, ¶¶ 3-4).  The engagement letter was executed by Suprema, not by the Trustee or his accountant.  Their opinion as to what was intended by the language in BDO's engagement letter is not competent. Only someone from Suprema involved with BDO's engagement letter would be competent to provide evidence as to the intent of the engagement letter.

engagement letter does not require the application of New York law to the Trustee's malpractice claims against BDO.[7]

### d)    New York's Choice of Law Rules Require The Application of New Jersey's Affidavit of Merit Statute

Since BDO's engagement letter does not require the application of New York substantive law, the Court must analyze whether New Jersey or New York law should apply in accordance with traditional choice of law rules. The court must apply the choice of law rules of the forum state, New York. *In re Gaston & Snow*, 243 F.3d 599, 605-07 (2d Cir. 2001)(forum state's choice-of-law rules apply to claims in Bankruptcy Court arising under state law.) New York's choice-of-law principles require a court to apply the law of the state with the most significant relationship with the particular issue in conflict. *Indosuez International Finance B.V. v. National Reserve Bank*, 98 N.Y.2d 238, 245, 744 N.E.2d 696, 700, 746 N.Y.S.2d 631, 635 (2002). "The rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.*

The issue of whether New Jersey or New York law should apply depends not on whether BDO has more overall contacts with New Jersey or New York, but which of those contacts are more significant as they relate to the purpose of New Jersey's affidavit of merit statute and any competing New York interest. The affidavit of merit statute is intended to weed out malpractice

---

[7]    Even if the choice of law provision in the engagement letter required the application of New York substantive law, which it does not, the Trustee waived the application of New York law by filing suit, rather than initiating arbitration because the choice of law provision is in the same sentence as the arbitration provision. *Cf. Bruce v. Barcomb,* 675 So.2d 219 (Fla. 2d DCA 1996)(plaintiff waived right to recover attorney's fees along with arbitration by filing suit instead of arbitration where attorney's fees provision was contained in arbitration clause).

claims against New Jersey professionals at an early stage of the litigation if the plaintiff does not have expert support for its claims. *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000). BDO provided New Jersey-licensed accountants from its New Jersey office to provide services to Suprema in New Jersey. The Trustee claims that those services were negligently provided. New Jersey plainly has the most significant contact with respect to that issue and, therefore, New Jersey law should apply. The Trustee has not identified any competing New York interest which would be offended if New Jersey's affidavit of merit were applied to his claims against BDO. The only competing interest is the Trustee's interest in not having his claims dismissed.

The fact that BDO is a national accounting firm does not change this analysis, as the Trustee contends. The fact that BDO happens to have more New York offices than New Jersey offices is not related to any of the substantive issues raised here. None of the allegedly negligent work was performed out of BDO's New York office, so those contacts with New York are not significant vis-à-vis whether New Jersey's affidavit of merit statute should be applied. The Trustee points out that any audits or opinion letters related to audits must be approved by BDO's regional advisor and national SEC director, somewhere outside of New Jersey. However, the alleged malpractice was in the audit itself, which was performed in New Jersey, not in the approval process. Again, those contacts are not significant vis-à-vis whether New Jersey's affidavit of merit statute should be applied. The state of Suprema's is incorporation, New York, is not related to the purpose of the affidavit of merit statute or whether it should be applied. The fact that BDO's counsel is from New York is irrelevant to the choice of law issue. The center of gravity of the activities set forth in the complaint is New Jersey, not New York.[8] New Jersey's

---

[8] A further indication that the center of gravity of these activities is the fact that the criminal investigation and criminal proceedings arising from Suprema's business are in New Jersey. The Sixth Amendment requires that all criminal prosecutions take place in the state and

interests in protecting its professionals against meritless malpractice cases would be thwarted if New Jersey law were not applied, and the application of New Jersey law would not offend any New York policy. Thus, based upon New York's choice of law rules, New Jersey's affidavit of merit statute should apply.

e) **New Jersey's Affidavit of Merit Statute Is A Substantive Rule Applicable In Federal Court**

The Trustee contends that New Jersey's affidavit of merit statute is a procedural rule, not a rule of substantive law, which is not applicable here and, that as a procedural rule, the statute conflicts with the Federal Rules. Every court which has considered this argument has rejected it. The affidavit of merit statute is a substantive rule which applies to a New Jersey malpractice claim brought in federal court. *Chamberlain*, 210 F.3d at 158-161. The purpose of the statute is "to assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Chamberlain*, 210 F.3d at 160. As the Third Circuit explained:

> The state statute is outcome determinative on its face, and failure to apply it would encourage forum shopping and lead to the inequitable administration of the law. Further, we perceive no overriding federal interest here that would prevent application of the state law by the federal courts.
>
> By requiring dismissal for failure to adhere to the statute, the New Jersey legislature clearly intended to influence substantive outcomes. It sought early dismissal of meritless lawsuits, not merely to apply a new procedural rule. Clearly, failure to apply the statute in a federal diversity action where no affidavit of merit has been filed would produce a different outcome than that mandated in a state proceeding.
>
> In addition to undercutting the state's interest in early dismissal of meritless lawsuits, failure to apply the state statute in federal courts could promote forum-shopping, despite the relatively low hurdle the New Jersey affidavit requirement presents to a legitimate claimant. Plaintiffs who have been unable to secure expert support for their claims and face dismissal under the statute in state court may, by filing in the federal court, be able to survive beyond the pleading

---

district in which the crime took place. The actions giving rise to the criminal prosecutions are the same actions that BDO was allegedly negligent in failing to discovery.

13

stage and secure discovery. The resulting opportunity for a "fishing expedition," which would hold the hope of turning up evidence of a meritorious claim or of a settlement to save defense litigation costs, can reasonably be expected to affect the forum choice of these plaintiffs.

Failure to apply the New Jersey affidavit of merit statute also implicates the second of the "twin aims" of *Erie*, avoiding inequitable administration of the laws. A defendant in a federal court that refused to apply the affidavit requirement would be unfairly exposed to additional litigation time and expense before the dismissal of a non-meritorious lawsuit could be secured, merely because the plaintiff is a citizen of a different state. Perhaps more importantly, the reputation of the professional involved would be more likely to suffer the longer the lawsuit went on, putting added pressure on the defendant to settle rather than endure extensive discovery.

Finally, we must also consider whether any countervailing federal interests prevent the state law from being applied in federal court. The only relevant federal interest that has been suggested is an interest in maintaining the integrity of the federal system of pleading embodied in the Federal Rules of Civil Procedure. We have previously concluded, however, that the New Jersey statute can be applied without compromising the federal system of pleading.

*Chamberlain*, 210 F.3d at 161. *See also Snyder v. Pascack Valley Hospital*, 303 F.3d 271, 273 (3d Cir. 2002)(following *Chamberlain*); *RTC Mortgage Trust 1994 v. Fidelity National Title Insurance Co.*, 981 F.Supp. 334, 342-345 (D.N.J. 1997)(rejecting claim that N.J. affidavit of merit statute conflicted with F.R.Civ.P. 8, 9, and 11); *Velazquez v. UPMC Bedford Memorial Hospital*, 328 F.Supp.2d 549 (W.D.Pa. 2004)(rejecting claim that Pa. affidavit of merit conflicted with F.R.Civ.P. 8, and 11, following *Chamberlain*).

Subsequent cases interpreting the affidavit of merit statute have recognized the substantial compliance doctrine as being applicable to the statute, but none of them even suggest, as the Trustee argued before the Bankruptcy Court that the affidavit of merit statute has been transformed into a procedural, rather than substantive, requirement. It has not been amended since it was passed. Nothing in the statute has changed. Rather, the substantial compliance doctrine had been applied to the affidavit of merit statute in light of the New Jersey Supreme Court's interpretation that "[t]he legislative purpose was not to create a minefield of hyper-

14

technicalities in order to doom innocent litigants possessing meritorious claims." *Ferreira v. Rancocas Orthopedic*, 178 N.J. 144, 151 (2003). The affidavit of merit statute is plainly a substantive requirement that is part-and-parcel of a malpractice claim against a New Jersey professional in the listed categories.

**f)     The Trustee Has Not Complied With The Affidavit of Merit Statute**

An affidavit of merit must be served within 60 days after the defendant answers the complaint, although a 60-day extension may be granted upon good cause shown. N.J.S.A. 2A:53A-27. A malpractice complaint should be dismissed with prejudice for failure to comply with the affidavit of merit statute unless the plaintiff substantially complies with the statute or in the case of "extraordinary circumstances". *Cornblatt v. Barow*, 153 N.J. 218, 239-240, 242 (1998).

The substantial compliance doctrine requires that the plaintiff show the following: 1) the lack of prejudice to the defending party; 2) a series of steps taken to comply with the statute involved; 3) a general compliance with the purpose of the statute; 4) a reasonable notice of petitioner's claim; and 5) a reasonable explanation why there was not strict compliance with the statute. *Ferreira*, 178 N.J. at 151. "Establishing those elements is a heavy burden." *Galik v. Clara Maas Medical Center*, 167 N.J. 341, 357 (2001). These factors come into play, however, only if the plaintiff provides the defendant with *something* in writing that does not technically comply with the statute, such as a certification[9] rather than an affidavit, *Cornblatt*, 153 N.J. at 136-40; or even an unsworn expert's report, *Galik*, 167 N.J. at 357-58. If plaintiff provides nothing to the defendant before the expiration of the 120-day period after defendant's answer and before

---

[9]     A certification under the New Jersey Court Rules is substantially similar to an unsworn declaration in a federal court. *Compare* N.J. Rule 1:4-4(b) *with* 28 U.S.C. § 1746.

defendant moves to dismiss, there is no substantial compliance. *Palanque v. Lambert-Wooley*, 168 N.J. 398 (2001).

In *Palanque*, the New Jersey Supreme Court did not even address the issue of lack of prejudice, or any of the other elements of substantial compliance, when a plaintiff obtained an expert report before suit but failed to serve it upon the defendant. Rather, it affirmed the dismissal of the complaint. As far as the Supreme Court was concerned, the fact that the plaintiff did not serve the affidavit of merit until after the defendant moved to dismiss was enough to defeat an argument of that the plaintiff substantially complied with the affidavit of merit statute.

> In both *Galik*, *supra.* and *Fink* [*v. Thompson*, 167 N.J. 551 (2001)], the plaintiffs took a series of steps that notified the defendants about the merits of the malpractice claims filed against them. Here, no such action was taken. Plaintiff obtained an expert report but did not provide the report or an affidavit to defendant. The action taken by plaintiff falls short of meeting the elements of substantial compliance. We find, therefore, that plaintiff has neither presented a sustainable claim of extraordinary circumstances, nor substantially complied with the statute.

*Palanque*, 168 N.J. at 405-06.

Here, the Trustee has still not complied with the affidavit of merit statute, substantially or otherwise. The Trustee still has not served an affidavit of merit. The affidavit from the Trustee's accountant, Brian A. Sirotta, C.P.A. which was filed with the Bankruptcy Court discusses everything *except* how it is he believes that it is likely that BDO failed to comply with the applicable standard of care.[10] He discusses BDO's business, and the Trustee's April 16, 2003

---

[10]    In addition to addressing the merits of plaintiff's claim, N.J.S.A. 2A:53A-27 requires that the person executing the affidavit of merit "be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice to substantially to the general area involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case." There is nothing in Mr. Serotta's affidavit to indicate that he has at least five years experience in performing audits. The application for retention of Mr. Serotta's firm, filed on April 5, 2002, states that his firm has expertise in insolvency matters, but that does

settlement meeting, but not the merits of the Trustee's claims against BDO. That affidavit does not substantially comply with the affidavit of merit statute and, even if it did, the affidavit is too late since it was filed after the expiration of the 120 day period and after BDO moved to dismiss. *Ferreira*, 178 N.J. at 154; *Palanque*, 168 N.J. at 404-06.

On the face of his affidavits, the Trustee has taken no steps to comply with the affidavit of merit statute. The Trustee contends that he substantially complied with the requirements of the affidavit of merit statute because he had a settlement meeting with BDO's counsel and supposedly discussed the merits of potential claims by the Trustee against BDO. A settlement meeting and some oral discussions allegedly directed to the merits of the Trustee's claims against BDO will not satisfy the statute. At a minimum, the plaintiff must provide something in writing to the defendant, signed by an expert, which outlines how the defendant deviated from acceptable standards. *Compare Galik*, 167 N.J. at 357-58 (plaintiff substantially complied with statute because "plaintiff's counsel obtained a detailed expert's report verifying the legitimacy of the claim long before filing the complaint, immediately shared it with defendant's carriers, and engaged in settlement discussions based on the report."); *Palanque*, 168 N.J. at 405-06 (no extraordinary circumstances or substantial compliance when plaintiff obtained expert report before filing suit, but failed to provide it to defendant). There is nothing in any of the substantial compliance cases which remotely suggests that a meeting and an oral presentation can substantially satisfy the requirements of the affidavit of merit statute. Indeed, having *something* in writing avoids any dispute as to what the plaintiff's position is with respect the alleged

---

not necessarily translate into five years worth of expertise in how to perform audits, which is the general area involved here. In addition, considering that Suprema's primary assets appear to be the claims arising from the "round tripping" allegations, of which this is one, Mr. Serotta may have a financial interest in this litigation in the sense that his firm may not get paid if the Trustee is not successful in this case.

malpractice, or whether the plaintiff made any such communication at all. The requirement of an affidavit has been relaxed so that an unsworn expert report will substantially comply with the requirements of the statute, but eliminating the requirement of something in writing is stretching the substantial compliance doctrine beyond the breaking point.

The Trustee cannot rely upon the allegations in the Complaint, along with the settlement discussions as he argued in the Bankruptcy Court, to put BDO on notice of its contentions, insofar as the affidavit of merit statute is concerned. The complaint is an attorney's good-faith belief that the defendant has engaged in wrongdoing. The purpose of the affidavit of merit statute is to require the plaintiff in a malpractice also get the opinion of an expert in the field as to how the defendant supposedly deviated from applicable standards. The Trustee has failed to satisfy the purpose of the statute. If he could do so by relying upon his complaint, the affidavit of merit statute would be erased from the books.

The Trustee's failure to serve an expert report is not excused under the doctrine of extraordinary circumstances. An attorney's carelessness or lack of proper diligence does not constitute "extraordinary circumstances". *Chamberlain*, 210 F.3d at 162; *Ferreira*, 178 N.J. at 152-53. A claim that the defendants lulled plaintiff into non-compliance does not constitute "extraordinary circumstances". *Chamberlain, id.* Ignorance of the law does not constitute "extraordinary circumstances". *Taylor v. Plousis*, 101 F.Supp.2d 255, 270 (D.N.J. 2000); *Hyman Zamft and Manard v. Cornell*, 309 N.J.Super. 586, 593 (App.Div. 1998). Neither the defendant nor the Court has an obligation to call the plaintiff's attention to the requirements of the statute. *Chamberlain*, *id.*

The Trustee's explanations as to why it did not strictly comply with the affidavit of merit statute are facially insufficient. First, there is not an issue as to whether the Trustee strictly

complied with the statute.  He did not comply at all.  It is unclear from the Trustee's papers whether the Trustee was simply unaware of the affidavit of merit statute, or whether he gave due consideration to whether New Jersey or New York law was to apply to his claims against BDO, incorrectly determined that New York law was to apply, and on that basis decided not to serve an affidavit of merit.

If the Trustee did not consider whether New Jersey or New York law would apply, and/or did not know about the affidavit of merit statute, under the authorities cited above, there are no extraordinary circumstances.  Ignorance of the requirements of the statute is not "extraordinary circumstances" and BDO had no obligation to bring the statute to the Trustee's attention.  The affidavit of merit statute is a matter of public record. It is in the New Jersey Statutes.  Cases interpreting the affidavit of merit statute are found in the ordinary New Jersey reporters.  These cases are not in the West's digest under a double-secret key number.  There are no "extraordinary circumstances" if the Trustee failed to exercise due diligence to find the affidavit of merit statute on his own.

If the Trustee considered the issue, he would have been on notice of the harsh result intended by the New Jersey legislature as confirmed by the New Jersey courts. The New Jersey Supreme Court has warned the bar as to the results of failing to serve an affidavit of merit.  "If defense counsel files a motion to dismiss after the 120-day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided that the doctrines of substantial compliance or extraordinary circumstances do not apply." *Ferreira*, 178 N.J. at 154.  The New Jersey Supreme Court has warned plaintiffs to err on the side of caution in serving an affidavit of merit.  For example, New Jersey recognizes an exception to the affidavit of merit statute for professional malpractice actions which can be

proven under the common knowledge doctrine. *Hubbard ex rel. Hubbard v. Reed*, 168 N.J. 387, 396-97 (2001)(dental malpractice action for pulling wrong tooth provable as a matter of common knowledge). Nonetheless, in *Hubbard*, the Supreme Court cautioned, "[T]he wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely upon expert testimony at trial." *Id.* at 397. "Diligence and attentiveness in the practice of law will spare plaintiffs' attorneys from later seeking an equitable remedy that may not be available. Those members of the plaintiffs' bar who follow the simple dictates of the statute will find no impediment to championing the causes of their clients." *Ferreira*, 178 N.J. at 155. If the Trustee considered the issue and consciously decided not to serve an affidavit of merit because he mistakenly believed that New York law applied, this is an instance where he gambled and lost, not an instance of extraordinary circumstances. If ignorance of the requirements of the affidavit of merit statute does not constitute "extraordinary circumstances", a conscious decision not to comply with the statute, knowing the harsh results of non-compliance, certainly will not constitute "extraordinary circumstances".

The Trustee cannot be saved, as he argued in the Bankruptcy Court, by filing an amended complaint, in reliance upon *Snyder v. Pascack Valley Hospital*, *supra*. In *Snyder*, the issue was when the 120-day period began to run. An amended complaint and second amended complaint were filed in a relatively short period of time. *Snyder*, 303 F.3d at 275. The Third Circuit held that the 120-day period started from the answer to the last amended complaint. *Snyder*, *id* at 276. Here, only one complaint has been filed. BDO answered. More than 120 days have passed since then. The fact that some of the third-party defendants has not answered is irrelevant, since the Trustee has no direct claim against them in this action and, in any event, they are not professionals for whom an affidavit of merit would be necessary. The Third Circuit explicitly

warned that a plaintiff could get himself more time by filing an amended complaint.  "We do not overlook the possibility that plaintiffs could file a series of amended complaints for the sole purpose of garnering additional time for providing an affidavit of merit.  We are confident, however, that trial courts would not permit plaintiffs to engage in such tactics simply to evade the statute."  *Id.*, n. 3.

The Trustee relied heavily in the Bankruptcy Court upon *Serocki v. Meritcare Health System*, 312 F.Supp.2d 1201 (D.S.D. 2004) for the proposition that it was entitled to a do-over with respect to serving an affidavit of merit.  The Trustee quoted the following language in *Serocki*:

> Whether plaintiff was correct or not as to the applicability of South Dakota substantive law, at no point prior to the expiration of the three month period prescribed by § 28-01-46 [North Dakota's malpractice expert statute] did the court announce that the action was governed by North Dakota law.  Consequently, it would be a draconian measure to dismiss plaintiff's action for allegedly failing to comply with a law that neither party even knew was applicable.  This is especially true here, where the issue of which law applies has been hotly contested by both parties from the onset.

*Serocki*, 312 F.Supp.2d at 2101.  While this is an accurate quotation from the case, this was not an instance where the court gave a plaintiff a second chance to comply with an affidavit of merit statute after an adverse choice of law decision.  In *Serocki*, plaintiff was a South Dakota resident whose husband died allegedly as the result of medical malpractice at a hospital in Fargo, North Dakota.  She filed suit in South Dakota state court, which the defendants removed to federal court.  *Serocki*, 312 F.Supp.2d at 1202.  The defendants moved to dismiss the complaint for failure to comply with North Dakota's expert affidavit statute, N.D.Cent.Code § 28-01-46 which required, *inter alia*, that a medical malpractice action must be dismissed unless "claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good

cause shown." *Serocki*, 312 F.Supp.2d at 1204.  The court found that the plaintiff had complied

with the statute, since she had obtained an expert opinion within the time provided.  Plaintiff had

obtained such an opinion, but since the statute did not require anything to be filed or served upon

the adversary, plaintiff had not failed to comply by not doing so.  *Id.* at 1205-06.  The court went

on to consider, but did not determine, that if the statute required something to be filed or served,

whether the statute was a procedural rule, but found that it conflicted with F.R.Civ.P. 26 with

respect to the service of expert opinions.  *Id.* at 1206-08.[11]  In particular, the court noted that the

parties had agreed that expert reports were to be exchanged On June 1, 2004, but defendants

claimed in their motion to dismiss that plaintiff was required to serve an expert report under the

North Dakota statute by August 20, 2003.  *Id.* at 1208.  In addition, defendants had apparently

previously made a motion as to whether North Dakota or South Dakota laws related to

comparative fault and several liability applied, without mention of the expert affidavit statute.

The court ruled on that motion that there was no conflict between the two, so the Court decided

to follow South Dakota law.  *Id.* at 1211.  Thus, under all of those circumstances, the court felt

that it would have been unjust to dismiss the action.  The Trustee overlooks the fact that, in the

first instance, the court found that the plaintiff had complied with the statute in question, so there

---

[11]     On this point, *Serocki* is distinguishable from the case here, since the Third Circuit and New Jersey federal courts have already found that New Jersey's affidavit of merit statute is substantive.   While the New Jersey Supreme Court has found that an expert report can substantially comply with the affidavit of merit statute, the affidavit of merit statute's requirements are different than the requirements of F.R.Civ.P. 26 and serve different purposes. Thus, there is no collision between the affidavit of merit statute and the Federal Rules.  *See Chamberlain*, 210 F.3d at 160 ("In short, these Federal Rules [8 and 9] and the New Jersey Statute can exist side by side, "each controlling its own intended sphere of coverage without conflict."") *citing Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980).  *See also Smith v. Planned Parenthood of the St. Louis Region*, 225 F.R.D. 233, 239-42 (E.D.Mo. 2004)(finding no conflict between Missouri health care affidavit statute and Rule 26, following *Chamberlain* and distinguishing *Serocki*.)

was no basis to dismiss the complaint in any event.  Here, however, the Trustee has not complied with New Jersey's affidavit of merit statute.

Moreover, the rule proposed by the Trustee would encourage willful blindness to choice of law issues.  A party involved in litigation touching more than one jurisdiction cannot simply assume that the substantive law of the forum will apply, then ask for a do-over if that assumption is incorrect.  There will always be choice-of-law issues when a transaction or tort claim touches more than one jurisdiction.  Upon the application of the forum state's choice-of-law rules, the forum state's law *may* apply as to certain issues.  However, it is unreasonable to just assume that the forum state's substantive law will apply.  Here, BDO performed its audits primarily at Suprema's New Jersey headquarters out of its New Jersey office. The Trustee claims that BDO negligently performed those audits and failed to uncover allegedly criminal activities which are now the subject of investigations and criminal prosecutions in New Jersey.  Under the circumstances, the Trustee is not entitled to the application of New York law simply because he filed an action in New York.  Among the values to be promoted by choice-of-law rules is discouraging forum shopping for the favorable application of a law.  Restatement of Conflict of Laws 2d, § 6, *Comment i*.  If this action, a professional malpractice claim on behalf of a New Jersey-based company related to accounting services performed in New Jersey by New Jersey accountants, had been filed in New Jersey Superior Court or in the District of New Jersey, New Jersey's affidavit of merit statute unquestionably would have applied.  There should be no different result if the action is filed in the Southern District of New York.

This is not a case of hyper-technical application of the affidavit of merit statute.  This is a claim for malpractice against New Jersey accountants for services provided in New Jersey to a company based in New Jersey.  New Jersey law applies to the Trustee's claims. The Trustee did

attempt to comply with New Jersey's affidavit of merit statute within the time provided by the statute.   As a result, his claims against BDO should be dismissed.

## CONCLUSION

For the reasons set forth herein, BDO's motion to dismiss should be granted. The Trustee has failed to serve an affidavit of merit, as required by New Jersey law, within the time provided by statute. No "extraordinary circumstances" exist for that failure. Moreover, if the complaint against BDO is dismissed, the pending motions to consolidate all of the "round tripping" suits and to unseal the pleadings in the suits against Suprema's insiders are not rendered moot and should be granted.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Third-Party Defendants
GEORGE VIEIRA, CALIFORNIA MILK
MARKET, and WEST COAST
COMMODITIES

By:    /s/ Lindsey H. Taylor
       LINDSEY H. TAYLOR

       -and-

By:    /s/ James E. Cecchi
       JAMES E. CECCHI

Dated: April 4, 2005