# Exhibit B

James E. Cecchi (JC 7697)
Jeffrey A. Cooper (JC 0763)
Lindsey H. Taylor (LT 7234)
CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
Attorneys for Third-Party Defendants
GEORGE VIEIRA, CALIFORNIA MILK MARKET,
and WEST COAST COMMODITIES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH P. SILVERMAN, ESQ., the Chapter 7 Trustee of the Estate of Suprema Specialties, Inc., Suprema Specialties West, Inc., Suprema Specialties Northeast, Inc., and Suprema Specialties Northwest, Inc.,<br><br>Plaintiff,<br>-against-<br><br>BDO SEIDMAN, LLP,<br><br>Defendant | Docket No. M-47-B |
| BDO SEIDMAN, LLP,<br><br>Third-Party Plaintiff,<br>-against-<br><br>MARK COCCHIOLA, STEVEN VENECHANOS, ARTHUR CHRISTENSEN, ANNE COCCHIOLA, JOHN VAN SICKELL, GEORGE VIEIRA, ROBERT QUATTRONE, LAWRENCE FRANSEN, BATTAGLIA & COMPANY, PACKING PRODUCTS COMPANY, INC., VILLA D'ESTE IMPORTING, INC., CALIFORNIA MILK MARKET, INC., WEST COAST COMMODITIES, INC., LNN ENTERPRISES, INC. and WALL STREET CHEESE, LLC<br><br>Third-Party Defendants | REPLY IN FURTHER SUPPORT OF OBJECTION OF THIRD-PARTY DEFENDANTS GEORGE VIEIRA, CALIFORNIA MILK MARKET AND WEST COAST COMMODITIES TO BANKRUPTCY COURT'S PROPOSED FINDINGS REGARDING BDO SEIDMAN'S MOTION TO DISMISS FOR FAILURE TO SERVE AN AFFIDAVIT OF MERIT |

## THE TRUSTEE'S CLAIMS AGAINST
## BDO SHOULD BE DISMISSED

The Trustee has raised various arguments as to why New Jersey law does not apply to its claims against BDO, or why it should be excused from failing to comply with New Jersey's affidavit of merit statute. None of those positions have any merit. The Trustee has brought professional malpractice claims on behalf of a New Jersey-based company against New Jersey accountants. New Jersey's affidavit of merit statute governing such claims applies to those claims. The Trustee failed to comply with the statute and as a result, the statute requires that the Trustee's claims be dismissed.

**a)** **The "Choice of Law" Provision In BDO's Engagement Letter Is Governed By The Words of The Contract, Not What Is Convenient to The Trustee**

The Trustee's analysis of the "choice of law" provision in BDO's engagement letters puts the cart before the horse. There is no question that a choice of law provision in a contract is enforceable if the chosen law has a reasonable relationship to the contract in issue. The Trustee then describes why New York law has a reasonable relationship to BDO's audits of Suprema. However, the issue of whether New York law is a reasonable choice only comes into play if New York law has been chosen in the first instance. That question is governed by the terms of the contract, which the Trustee avoids.

The starting point for interpreting a contract is the words of the contract itself. *In re Tops Appliance City*, 372 F.3d 510, 514 (3d Cir. 2004). As BDO and the Viera Defendants have emphasized before, the "choice of law" provision relied upon by the Trustee is contained in a separate provision setting forth the procedure to be followed in the event of a dispute between BDO and Suprema with respect to BDO's services. It is not contained in a general provision stating that the interpretation of the contract and/or the parties performance is to be governed by

1

New York law. The arbitration provisions in the engagement letters do contain the words "the laws of the State of New York" as the Trustee claims (*See* Trustee's Brief at 6), but the Trustee cannot pluck those words out of context to give them the meaning that the Trustee wishes. "Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose; and thus the literal sense of terms may be qualified by the context." *Newark Publishers' Association v. Newark Typographical Union*, 22 N.J. 419, 426 (1956). Taken in context in the engagement letters, the "choice of law" provision plainly and unambiguously provides that the procedure for resolving disputes between BDO and Suprema is in arbitration in accordance with New York and AAA rules governing arbitration. It does not provide that New York law is to be applied to the substance of the claims, as the Trustee claims now.

b)  **New Jersey Substantive Law Applies To The Trustee's Claims**

The Trustee contends that New Jersey's affidavit of merit statute should not apply because it conflicts with the Federal Rules and because it is a procedural rule, rather than a substantive rule. (Trustee's Brief at 7-15). These contentions have previously been considered, and rejected, by the Third Circuit and the District of New Jersey. *Chamberlain v. Giampapa*, 210 F.3d 154, 161 (3d Cir. 2000). *Accord Snyder v. Pascack Valley Hospital*, 303 F.3d 271, 273 (3d Cir. 2002)(following *Chamberlain*); *RTC Mortgage Trust 1994 v. Fidelity National Title Insurance Co.*, 981 F.Supp. 334, 342-345 (D.N.J. 1997)(rejecting claim that N.J. affidavit of merit statute conflicted with F.R.Civ.P. 8, 9, and 11).

> The state statute is outcome determinative on its face, and failure to apply it would encourage forum shopping and lead to the inequitable administration of the law. Further, we perceive no overriding federal interest here that would prevent application of the state law by the federal courts.

*Chamberlain*, *id.*

2

Rather than following these authorities, which have considered the question directly, the Trustee wishes this Court to follow dictum in a decision from the District of South Dakota, *Serocki v. Meritcare Health System*, 312 F.Supp.2d 1201 (D.S.D. 2004), which interpreted North Dakota's rule regarding expert opinions in medical malpractice cases, and, by analogy to New Jersey's statute, the Trustee requests that this Court determine that New Jersey's statute conflicts with the Federal Rules. Obviously, the decisions of the Third Circuit and the District of New Jersey are not binding on this Court, but since they directly addressed the question of whether New Jersey's affidavit of merit statute conflicted with the Federal Rules, they are considerably more persuasive authorities than that of another district considering a different statute from different state.

In addition, by asking the Court to ignore Third Circuit and District of New Jersey decisions as to the applicability of New Jersey's affidavit of merit statute in federal court, the Trustee would have this Court create an opportunity for forum shopping, one of the evils *Erie Railroad Co. v. Tompkins*, 304 U.S. 68 (1938) was intended to eliminate. If the Court followed the Trustee's reasoning, a plaintiff filing a malpractice claim against a New Jersey professional in New Jersey state or federal court would have to comply with the affidavit of merit statute, while the same plaintiff filing the same claim against the same defendant in the Southern District of New York would not have to comply. The Third Circuit in *Chamberlain* warned against such disparate treatment.

> Failure to apply the New Jersey affidavit of merit statute also implicates the second of the "twin aims" of *Erie*, avoiding inequitable administration of the laws. A defendant in a federal court that refused to apply the affidavit requirement would be unfairly exposed to additional litigation time and expense before the dismissal of a non-meritorious lawsuit could be secured, merely because the plaintiff is a citizen of a different state. Perhaps more importantly, the reputation of the professional involved would be more likely to suffer the longer the lawsuit

3

went on, putting added pressure on the defendant to settle rather than endure extensive discovery.

*Chamberlain*, *id*. Clearly, New Jersey's affidavit of merit statute apply uniformly, regardless of which court a claim is filed in. Since it would be applicable to a claim against a New Jersey professional in New Jersey state court and New Jersey federal court, it should also apply to a claim filed in New York federal court.

The Trustee correctly states that BDO is a New York limited liability company and Suprema is a New York corporation. However, New York is not the only state which has contact with this litigation and, in fact, those contacts with New York are irrelevant under New York choice of law rules as to which law should apply to the Trustee's claims. "The rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Indosuez International Finance B.V. v. National Reserve Bank*, 98 N.Y.2d 238, 245, 744 N.E.2d 696, 700, 746 N.Y.S.2d 631, 635 (2002). Based upon all of these facts and circumstances, the fact that Suprema and BDO are incorporated in New York are irrelevant to the purpose of New Jersey's affidavit of merit statute and whether it should apply to Suprema's claims. Likewise, the fact that BDO has more offices in New York than New Jersey is irrelevant, since the alleged negligence took place in New Jersey, not in New York. All of the contacts relevant to determining what law should apply to the Trustee's malpractice claims are with New Jersey, not with New York.

There is no dispute regarding the following facts: The Trustee is asserting a state-law accounting malpractice action against BDO on behalf of Suprema. Suprema's headquarters were in Paterson, New Jersey. Suprema engaged New Jersey accountants from BDO's Woodbridge,

4

New Jersey[1] office to perform the audits in question. The work on those audits took place primarily in New Jersey. In its complaint, the Trustee alleges that BDO's accountants were negligent in uncovering a criminal scheme involving Suprema's principals and others which was investigated by federal and state authorities in New Jersey and which have resulted in criminal charges being filed in the United States District Court for the District of New Jersey. The purpose of New Jersey's affidavit of merit statute is "to assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Chamberlain*, 210 F.3d at 160.

> Notwithstanding these facts, the Trustee argues
>
> It would be inequitable and draconian to dismiss the Trustee's complaint without even an opportunity to comply with the New Jersey Statute because it was not until BDO made its dismissal motion that there was even a suggestion that New Jersey law, rather than New York law designated in the engagement letters, <u>might</u> govern this adversary proceeding

(Trustee's Brief at 18). As has been set forth in the Objectors previous papers and above, New York substantive law is *not* designated in the engagement letters, or at least not in a reasonable reading of the engagement letters. Moreover, considering that virtually all of the activities that form the subject matter of the Trustee's complaint took place in New Jersey, the Trustee would have to be willfully blind to say that that "there was [not] even a suggestion that New Jersey law . . . <u>might</u> govern this adversary proceeding". There was no need for any of the adverse parties to have suggested the issue, and, indeed, they had no obligation to bring the affidavit of merit

---

[1] The Trustee contends that *someone* has attempted to portray BDO as a "small, local New Jersey accounting firm". (Trustee Brief at 5, n. 7). The Viera Parties are unaware of anyone, particularly BDO or themselves, as portraying BDO as anything other than a national accounting firm, and we defy the Trustee to point to anything in either parties' papers which state to the contrary. The only reason that BDO's size is even relevant is that in the Bankruptcy Court, the Trustee contended that New Jersey's affidavit of merit statute did not apply to national accounting firms, an exception that has no support in the language of the statute.

statute to the Trustee's attention. Neither the defendant nor the Court has an obligation to call the plaintiff's attention to the requirements of the statute. *Chamberlain*, 210 F.3d at 162. Rather, the facts themselves "suggest"[2] that New Jersey law applies. Any reasonable consideration of the choice of law would have lead to the conclusion that not just that New Jersey law *might* apply, but that New Jersey law *does* apply because there are no other states with contact with the Trustee's claims which have an interest in having their law applied.[3]

The Trustee remains fixated on the idea that since BDO has more New York offices than New Jersey offices, New York law should apply. (Trustee's Brief at 5-6 and n. 7, 8). He has never offered an explanation how those New York contacts relate to the claims asserted here, or how those contacts would weigh more with respect to the application of New York law to its claims against BDO. The fact that he has only asserted claims against BDO, rather than against the individual accountants, does not change the analysis. BDO may be, as the Trustee claims, a New York limited liability partnership, but it can only act through natural persons. The natural persons who performed the allegedly negligent acts or omissions are New Jersey-licensed accountants who were performing work for a New Jersey-based company in New Jersey.

---

[2]  Under the circumstances, saying that the facts "suggest" that New Jersey law applies is roughly equivalent to saying that Don Corleone's "offer you can't refuse" is a "suggestion" that you do what he wants. The client on behalf of whom the Trustee's claims are being asserted was based in New Jersey, and the allegedly negligent work was performed almost exclusively in New Jersey by New Jersey accountants, yet the Trustee apparently claims it never occurred to him that New Jersey law *might* apply.

[3]  The Trustee claims that it should not have to comply with New Jersey law, even as a prophylactic matter, because, it claims, that Illinois, California, or Idaho law *might* also apply. The Trustee does not explain, however, why New York's choice of law rules *might* require that the law of any of those states apply to its claims.

Moreover, the Trustee had ample opportunity to comply with the affidavit of merit statute. The Trustee supposedly first met with BDO, along with his own accountant, to discuss its potential claims in April 2003, so obviously he had given consideration to potential claims prior to that time. This action was filed in August 2004. BDO answered on October 7, 2004. The 60-day time period for the Trustee to serve his affidavit of merit began running then. Under the affidavit of merit statute, the Trustee was entitled to an additional 60-day extension of time. The Trustee never served an affidavit of merit, or anything roughly equivalent to an affidavit of merit. BDO filed its motion on February 23, 2005. Thus, the Trustee had nearly two years to obtain an affidavit of merit, which is more than ample opportunity. The Trustee is not entitled to even more time because he either did not consider that New Jersey law applied or guessed wrong that New York, rather than New Jersey, law applied.

The New Jersey Supreme Court has warned parties of the consequence of failing to serve an affidavit of merit within the time provided by the statute. "If defense counsel files a motion to dismiss after the 120-day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided that the doctrines of substantial compliance or extraordinary circumstances do not apply." *Ferreira v. Rancocas Orthopedic*, 178 N.J. 144, 154 (2003). Here, neither the doctrines of substantial compliance or extraordinary circumstance apply. There is no substantial compliance if the plaintiff in a professional malpractice case sends nothing to the defendant. *Palanque v. Lambert-Wooley*, 168 N.J. 398, 405-06 (2001)(no substantial compliance or extraordinary circumstances where plaintiff obtained expert report before filing suit, but never sent report to defendant). An attorney's carelessness or lack of proper diligence does not constitute "extraordinary circumstances". *Chamberlain*, 210 F.3d at 162; *Ferreira*, 178 N.J. at 152-53. A claim that the

7

8

defendants lulled plaintiff into non-compliance does not constitute "extraordinary circumstances". *Chamberlain, id.* Ignorance of the law does not constitute "extraordinary circumstances". *Taylor v. Plousis*, 101 F.Supp.2d 255, 270 (D.N.J. 2000); *Hyman Zamft and Manard v. Cornell*, 309 N.J.Super. 586, 593 (App.Div. 1998). The Trustee never sent anything in writing to BDO representing an expert's opinion that BDO had committed malpractice. Thus, by definition, the Trustee failed to substantially comply with the affidavit of merit statute. When boiled down to its essentials, the Trustee's excuses for failing to provide an affidavit of merit is that he did not realize that he was required to provide one and BDO did nothing to bring this fact to the Trustee's attention. Neither of those facts constitute extraordinary circumstances.

## **CONCLUSION**

For the reasons set forth above and in the Vieira Parties Objection, the New Jersey's affidavit of merit statute applies to the Trustee's claims against BDO. That statute requires that the plaintiff in a professional malpractice claim, such as this one, provide an affidavit of merit within 120 days after the defendant files an answer or face dismissal of those claims with prejudice. The Trustee failed to substantially comply with the statute and that failure to comply is not excused by extraordinary circumstances. As a result, the Trustee's claims must be dismissed.

                                            CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Third-Party Defendants
GEORGE VIEIRA, CALIFORNIA MILK
MARKET, and WEST COAST
COMMODITIES

By: _____
     LINDSEY H. TAYLOR

-and-

By: _____
     JAMES E. CECCHI

Dated: April 26 2005