UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

      SUPREMA SPECIALTIES, INC., *et al.,*

               Debtors.

-----------------------------------------------------------x
KENNETH P. SILVERMAN, ESQ., THE
CHAPTER 7 TRUSTEE OF THE ESTATE
OF SUPREMA SPECIALTIES, INC.,
SUPREMA SPECIALTIES WEST, INC.,
SUPREMA SPECIALTIES NORTHEAST,
INC., AND SUPREMA SPECIALTIES          07 Civ. 7505 (RJH)
NORTHWEST, INC.,

               Plaintiff,

     - against -

BDO SEIDMAN LLP,

               Defendant.

-----------------------------------------------------------x

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## PLAINTIFF-APPELLEE'S BRIEF IN OPPOSITION TO THE APPEAL FILED BY BDO SEIDMAN LLP

Anthony C. Acampora (ACA#0838)
Jay S. Hellman (JSH#6038)
Silverman Perlstein & Acampora LLP
100 Jericho Quadrangle
Jericho, New York 11530
(516) 479-6300

aca/D251305v/F044278

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Agan v. Katzman & Korr, P.A.*, 328 F.Supp.2d 1363 .......................................... 22

*Aramony v. United Way of America*, 1998 U.S.Dist. LEXIS 5885 ......................... 8

*Bankcard America, Inc. v. Universal Bancard System*, 203 F.3d 477 ................. 22

*Care Environmental Corp. v. M2 Techs., Inc.*, 2006 U.S.Dist. LEXIS 2934 ........ 22

*In re Comstock*, 16 B.R. 206 ................................................................. 11

*Don King Productions v. Douglas*, 742 F.Supp. 741 ............................................. 8

*In re Enron Corp.*, 2003 U.S.Dist. LEXIS 1383 ...................................................... 2

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 .......................................................... 7

*F & D Property Company v. Alkire*, 385 F.2d 97 ................................................... 2

*Freidus v. First National Bank*, 928 F.2d 793 .................................................... 22

*Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 ..................................... 12

*In re Gaston & Snow*, 243 F.3d 599 ................................................................... 11

*Guaranty Trust Co. v. York*, 326 U.S. 99 ............................................................ 16

*Hanna v. Plumer*, 380 U.S. 460 ........................................................................ 11

*Lange v. Farmers Federation Cooperative, Inc.*, 249 F.Supp. 544 ..................... 11

*Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 239 F.Supp.2d 322 ............. 9

*Libby, McNeill, & Libby v. City National Bank*, 592 F.2d 504 ................................ 2

*McDaniel v. United States of America*, 2004 U.S.Dist. LEXIS 23196 ................. 14

*McLaughlin v. Pernsley*, 876 F.2d 308 ................................................................. 2

*In re Momentum Manufacturing Corp.*, 25 F.3d 1132 .......................................... 2

*Morrison-Knudsen Co. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir. 1987), *cert. dismissed*, 488 U.S. 935 ............................................................ 2

*In re Nemko, Inc.*, 202 B.R. 673 ........................................................................ 2

*Newell v. Ruiz*, 286 F.3d 166 ............................................................... 6, 17, 19

*In re PCH Associates*, 949 F.2d 585 ............................................................ 2

*Penda Corp. v. United States*, 44 F.3d 967 ........................................... 2

*Poindexter v. Bonsukan*, 145 F.Supp.2d 800 .............................. 13, 14

*RTC Mortgage Trust v. Fidelity National Title Insurance Co.*, 981 F.2d 334 ....... 15

*Radioactive, J.V. v. Manson*, 153 F.Supp.2d 462 ................................ 8

*Serocki v. Meritcare Health System*, 312 F.Supp.2d 1201 .............. 14, 18, 19

*In re Six West Retail Acquisition, Inc.*, 286 B.R. 239 ........................... 2

*Snyder v. Pascack Valley Hospital*, 303 F.3d 271 .................... 6, 16, 17

*In re Spanish Trails Lanes, Inc.*, 16 B.R. 304 ...................................... 11

*Starter Corp. v. Converse, Inc.*, 170 F.3d 286 ................................... 22

*Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506 ....... 22

*United States v. Gonzalez*, 748 F.2d 74 ........................................... 22

*U.S. v. Hauert*, 40 F.3d 197 ................................................................ 22

*Walker v. Armco Steel Corp.*, 446 U.S. 740 .............................. 12, 16

*Woodling v. Garrett Corp*, 813 F.2d 543 ............................................. 8

## STATE CASES

*Burns v. Belafsky*, 166 N.J. 466, 766 A.2d 1095 ...................... 5, 6, 17

*Fernandez v. Jersey City Medical Ctr. Breast Clinic*, 336 N.J.Super. 594, 765 A.2d 1073 ................................................................... 5, 6, 17

*Ferreira v. Rancocas Orthopedic Associates*, 178 N.J. 144 ...... 5, 6, 15

*Fink v. Thompson*, 167 N.J. 551, 772 A.2d 386 ................................. 22

*Galik v. Clara Maass Medical Ctr.*, 167 N.J. 341, 771 A.2d 1141 .......................... 6

*Galik v. Clara Maass Medical Ctr.*, 167 N.J. 341, 771 A.2d 1141...... 20, 21, 23

*Hefferon v. Gitler*, 346 N.J.Super. 141....................................................... 6, 17, 18

*Highland Mechanical Industrial, Inc. v. Herbert Construction Co., Inc.*, 216 A.D.2d 161, 628 N.Y.S.2d 655 ...................................................................... 10

*Kolb v Strogh*, 158 A.D.2d 15, 558 N.Y.S.2d 549 ............................................. 16

*Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 541 N.Y.S.2d 742 ....................................................................................................................... 10

*Mayfield v. Community Medical Associates, P.A.*, 335 N.J.Super. 198, 762 A.2d 237 ............................................................................................................ 5

*Sherrill v. Grayco Builders, Inc.*, 64 N.Y.2d 261, 486 N.Y.S.2d 159, [475 N.E.2d 772] ........................................................................................................ 4

*Zamft v. Cornell*, 309 N.J.Super. 586 ................................................. 6, 17, 18, 19

## DOCKETED CASES

*Special Situations Fund, III, L.P. and Special Situations Cayman Fund, L.P. v. Cocchiola*, Civ. No. 02-3099.................................................................... 4

*In re Suprema Specialties, Inc., Securities Litigation*, Civ. No. 02-168 ................. 4

## FEDERAL STATUTES

Fed. R. Civ. P. 26 ................................................................................................. 14

Fed. R. Evid. 408 ................................................................................................. 22

Federal Rule of Bankruptcy Procedure 8013 ........................................................ 2

Federal Rule of Bankruptcy Procedure 7026 .......................................... 12, 13, 15

Federal Rule of Bankruptcy Procedure 9011 ............................................... 13, 16

Federal Rule of Civil Procedure 11 ............................................................... 14, 15

Federal Rule of Civil Procedure 26(b) ................................................................ 14

Restatement 2d of Contracts, § 206 ................................................................... 10

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

STANDARD OF REVIEW ......................................................................................... 2

STATEMENT OF ISSUES ON APPEAL .................................................................. 2

STATEMENT OF FACTS ......................................................................................... 3

   A. The Underlying Facts ...................................................................................... 3

   B. The New Jersey Statute .................................................................................. 4

   C. The Bankruptcy Court's Decision .................................................................. 6

SUMMARY OF ARGUMENT .................................................................................... 7

ARGUMENT ............................................................................................................. 8

   I. THE NEW JERSEY STATUTE IS IRRELEVANT BECAUSE BDO
     SPECIFIED NEW YORK LAW IN ITS ENGAGEMENT LETTERS WITH
     SUPREMA ................................................................................................... 8

   II. THE NEW JERSEY STATUTE WOULD STILL NOT APPLY TO THIS
     LITIGATION EVEN IF THIS CASE WERE NOT GOVERNED BY NEW
     YORK LAW .................................................................................................. 11

     A. The New Jersey Statute Directly Conflicts With The Federal And, Therefore,
       Cannot And Does Not Apply ..................................................................... 11

     B. The New Jersey Statute Is Not Outcome Determinative And Thus Does Not
       Apply ......................................................................................................... 16

   III. DISMISSAL STILL WOULD NOT HAVE BEEN APPROPRIATE EVEN IF
     THE NEW JERSEY STATUTE DID APPLY TO THIS LITIGATION ............... 17

     A. The Extraordinary Circumstances Present Here Would Excuse Compliance
       With The New Jersey Statute .................................................................... 18

     B. The Trustee Has Substantially Complied With The New Jersey Statute ........ 20

CONCLUSION ........................................................................................................ 24

aca/D251305v/F044278

## PRELIMINARY STATEMENT

This is a $175 million accountants' malpractice case, brought by plaintiff-appellee Kenneth P. Silverman, Esq., the chapter 7 trustee (the "Trustee") of Suprema Specialties, Inc. ("Suprema") against Suprema's auditors, defendant BDO Seidman LLP ("BDO"). It arises out of a multimillion dollar fraud perpetrated at Suprema, which BDO failed to uncover, that resulted in the loss of over $100 million to Suprema's creditors, the criminal convictions of several of Suprema's officers and directors and their co-conspirators, and civil litigation by various shareholders and class plaintiffs against BDO and others.  BDO moved to dismiss the case on procedural grounds, arguing that the Trustee failed to comply with a New Jersey statute that requires the plaintiff in a New Jersey malpractice action to file an expert "affidavit of merit" shortly after commencing the litigation, in which the expert must attest to the validity of the plaintiff's claims (the "New Jersey Statute"). The bankruptcy court rejected BDO's motion, holding that New York law applies to this litigation.

The bankruptcy court's decision is plainly correct.  The parties' contracts *specified* that New York law would apply to the resolution of any disputes.  Even if New Jersey law applied, the New Jersey Statute has been treated as a procedural rule that directly conflicts with federal law.  Under the *Erie* doctrine, in diversity cases, federal courts must apply state "substantive" law but federal "procedural" law so the affidavit-of-merit rule is inapplicable here.  Moreover, even if the New Jersey Statute did apply, under New Jersey law, the extraordinary circumstances present in this case would excuse compliance with it.  Finally, the Trustee has substantially complied with the New Jersey Statute in a manner that New Jersey courts would consider to be sufficient to avoid dismissal of this adversary proceeding.[1]

---

[1]    Although third-party defendants and convicted felons George Vieira ("Vieira") and his affiliated entities have filed a "brief" in support of BDO's appeal, they are not aggrieved by, and thus lack standing to appeal from, the bankruptcy court's decision, because their

aca/D251305v/F044278

## STANDARD OF REVIEW

The District Court, in hearing appeals from the Bankruptcy Court, reviews questions of law *de novo* and questions of fact under the "clearly erroneous" standard of review. *See* Federal Rule of Bankruptcy Procedure 8013; *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re PCH Associates*, 949 F.2d 585, 597 (2d Cir. 1991). Discretionary decisions of the Bankruptcy Court are reviewed for abuse of discretion. *See In re Enron Corp.*, 2003 U.S. Dist. LEXIS 1383 (S.D.N.Y. 2003); *In re Nemko, Inc.*, 202 B.R. 673, 677-79 (E.D.N.Y. 1996).[2]

## STATEMENT OF ISSUES ON APPEAL

1.    Did the Bankruptcy Court correctly conclude that New York law applies to this adversary proceeding when (a) BDO's engagement letters, which were drafted by BDO, specifically provide that disputes are to be resolved in accordance with New York law, and (b) BDO was required to obtain a pre-release review of any filings made by Suprema, a New York corporation, by BDO's Regional Technical Advisor and National SEC Director?

2.    Assuming this dispute arises under New Jersey law rather than New York law, does the New Jersey Statute apply in this adversary proceeding so that dismissal with prejudice is warranted when (a) the New Jersey Statute, which New Jersey court have treated as merely a procedural rule governing litigation in New Jersey state courts, conflicts

---

pecuniary interest is indirect and consequential rather than direct and immediate. *See generally Penda Corp. v. United States*, 44 F.3d 967, 972 (Fed. Cir. 1994); *Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 511 (9th Cir. 1978); *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987), *cert. dismissed*, 488 U.S. 935 (1988). Indeed, neither Vieira nor his companies sought leave to appeal from the Bankruptcy Court's interlocutory decision. *See generally, F & D Property Company v. Alkire*, 385 F.2d 97, 100 (10th Cir. 1967); *McLaughlin v. Pernsley*, 876 F.2d 308, 313 (3d Cir. 1989).

[2]    A Bankruptcy Court abuses its discretion when it bases its decision on an erroneous view of the law or on clearly erroneous factual findings. *See In re Six West Retail Acquisition, Inc.*, 286 B.R. 239, 247-48 (S.D.N.Y. 2002). Neither occurred in this case.

with the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure, (b) extraordinary circumstances exist that would excuse compliance with the New Jersey Statute even if it did apply, and (c) the Trustee has, in fact, substantially complied with the New Jersey Statute?

## STATEMENT OF FACTS

### A. The Underlying Facts

Suprema, the debtor, was a cheese manufacturer.  After its chief financial officer and its controller resigned, federal and state agents seized its books, records and computers, questioned employees, and embargoed certain products.    Subsequently, several of Suprema's employees, together with the principals of its largest customers, pled guilty to criminal charges that, from at least 1996 through 2002, they and their companies, with the assistance and participation of certain members of Suprema's management, perpetrated a fraud that resulted in the creation of more than $700 million of fictitious or inflated sales by Suprema.[3]  On April 2, 2007, Suprema's president and its chief financial officer were convicted, after a trial, of multiple counts of conspiracy, bank fraud, mail fraud, wire fraud and making false statements to the Securities and Exchange Commission ("SEC"), but have not yet been sentenced.

BDO acted as, among other things, Suprema's independent auditors for the entire seven–year period during which this massive criminal fraud was perpetrated, and over that period blithely confirmed the validity of Suprema's claimed, but wholly fictitious, 700% sales growth.  In this litigation, the Trustee has sued BDO for accountants' malpractice.  BDO,

---

[3]  On January 7, 2004, two Suprema employees, and three principals of Suprema's largest customers, including third party defendants Vieira, California Milk Market and West Coast Commodities, pled guilty to the above referenced charges.  On March 2, 2005, a principal of several of Suprema's largest suppliers and/or customers pled guilty to similar charges.  None of those criminal defendants have yet been sentenced.

aca/D251305v/F044278

together with Suprema's officers, directors, and underwriters, has also been sued civilly by various class and shareholder plaintiffs.[4]

Each of the engagement letters between BDO and Suprema, which were exclusively drafted by Scott Univer, Esq. ("Univer"), BDO's general counsel, and executed by BDO and Suprema, provides:

> If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration *in accordance with the laws of the State of New York* and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association....

Exhibits 1-4 to the Acampora Affidavit (emphasis supplied).[5]

As BDO admits in its brief on appeal, it answered the Trustee's complaint without reference to its hidden, albeit erroneous, belief that New Jersey law and the New Jersey Statute applied to this adversary proceeding. Subsequently, after awaiting the expiration of the 120 day time limit for the filing of an "affidavit of merit" under the New Jersey Statute, BDO moved to dismiss the complaint on the grounds that the Trustee had failed to state a claim against it because he had failed to provide the allegedly required affidavit.

**B.    The New Jersey Statute**

The New Jersey Statute provides that, within sixty days after an answer is filed (which period may be extended by an additional sixty days), a plaintiff in a New Jersey malpractice action must submit the affidavit of an expert stating that "there exists a reasonable probability

---

[4]    Two securities class actions in which BDO is a defendant were filed in the United States District Court for the District of New Jersey and are entitled (a) *In re Suprema Specialties, Inc., Securities Litigation*, Civ. No. 02-168, and (b) *Special Situations Fund, III, L.P. and Special Situations Cayman Fund, L.P. v. Cocchiola*, Civ. No. 02-3099.

[5]    By its decision to aggressively litigate this case, BDO has waived any right to arbitrate. *See Sherrill v. Grayco Builders, Inc.,* 64 N.Y.2d 261, 486 N.Y.S.2d 159, 475 N.E.2d 772 (1985).

aca/D251305v/F044278

that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices . . . ." N.J.S.A. 2A:53A-27. *See Burns v. Belafsky*, 166 N.J. 466, 475, 766 A.2d 1095 (2001).[6]

"The legislative policy [behind the New Jersey Statute was] not only to dispose of meritless malpractice claims early in the litigation, but also to allow meritorious claims to move forward unhindered." *Burns*, 166 N.J. at 474.   The purpose was **not** to "create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims." *Mayfield v. Community Med. Assocs., P.A.*, 335 N.J. Super. 198, 209, 762 A.2d 237, 244 (2000); *Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 150-51 (2003).   Nor was it intended to encourage gamesmanship or a slavish adherence to form over substance or to reward defendants who, as BDO did in this case, wait for an alleged "default" before requesting compliance. *Ferreira*, 178 N.J. at 154-55.[7]

New Jersey courts have continuously struggled with the interpretation and application of the New Jersey Statute, and at least one jurist has questioned its constitutionality.[8] *See,*

---

[6]   The New Jersey Statute "does not apply to malpractice actions filed on or after [its] effective date … if the facts giving rise to the malpractice complaint occurred before that date." *Fernandez v. Jersey City Medical Ctr. Breast Clinic*, 336 N.J. Super. 594, 598, 765 A.2d 1073 (2001).   Consequently, it may not apply in this case because the allegations in the complaint establish that the facts giving rise to the malpractice claim occurred before its June 29, 1995 effective date and continued through BDO's resignation as Suprema's auditors in early 2002.

[7]   "[Procedural] defects do not 'go to the heart of the cause of action.'   Indeed, because they do not reflect negatively on the merits of a plaintiff's malpractice claim, dismissing the complaint does nothing to advance the legislative goal of ridding the system of frivolous cases. On the contrary, it thwarts the stated aim of allowing meritorious cases to go forward. That was never the intention of the Legislature when it enacted" the New Jersey Statute. *Ferreira*, 178 N.J. at 154-55 (Long, J. concurring in part and dissenting in part).

[8]   Justice Zazzali recognized that "after extensive litigation over strict application of the statute, one fairly can say that the affidavit-of-merit requirement has engendered significant concerns that call for a more thorough exploration of the statute's constitutionality.   Indeed,

aca/D251305v/F044278

e.g., *Ferreira*, 178 N.J. 160-69 (dissent and concur). Accordingly, in recognition that "the heartland of [New Jersey Statute] cases involves nothing more than procedural mistakes that are entirely irrelevant to the legitimacy of the cause of action" and to avoid the "painful experience" and "sideshows" that the New Jersey Statute jurisprudence engenders, New Jersey courts have consistently applied equitable principles to avoid its overly-harsh application to meritorious malpractice actions. *Ferreira*, 178 N.J. at 154. *See generally Snyder v. Pascack Valley Hosp.*, 303 F.3d 271 (3d Cir. 2002); *Newell v. Ruiz*, 286 F.3d 166 (3d Cir. 2002); *Galik v. Clara Maass Medical Ctr.*, 167 N.J. 341, 771 A.2d 1141 (2001); *Burns v. Belafsky*, 166 N.J. 466 (2001); *Hefferon v. Gitler*, 346 N.J. Super. 141 (App. Div. 2001); *Fernandez v. Jersey City Medical Ctr.*, 336 N.J. Super. 594 (App. Div. 2001); *Zamft v. Cornell*, 309 N.J. Super. 586 (App. Div. 1998).

## C.    The Bankruptcy Court's Decision

At a hearing held on March 23, 2005, Bankruptcy Judge Blackshear denied BDO's motion finding that New York law applied to the Trustee's adversary proceeding (the "Decision"). Leave to appeal was granted to BDO on August 7, 2007 (Jones, J.).[9]

---

numerous courts have struggled with the statute when its application would bar an apparently meritorious claim." He was concerned that the New Jersey Statute "unconstitutionally usurps judicial power" because "[n]otwithstanding the legitimacy of the legislative objective, it may be difficult to reconcile the strict pleading requirements contained in the statute with our flexible approach to pleading, a keystone of our procedural jurisprudence that is reflected in both our court rules and case law.... [D]ismissing a claim for failure to comply with a procedural hurdle disserves both the legislative goal of preserving meritorious malpractice actions and the broader *raison d' etre* of our court rules--achieving substantial justice on the merits." *Ferreira*, 178 N.J. at 166 (citations omitted)(concurring in part and dissenting in part).

[9]    The merits of the Trustee's complaint are not at issue in this appeal, The pertinent facts, however, are set forth at length in the Trustee's complaint and in the affidavits of (a) Kenneth P. Silverman, Esq. dated March 11, 2005 (the "Silverman Affidavit"), (b) Anthony C. Acampora, Esq. dated March 11, 2005, and the exhibits annexed thereto (the "Acampora Affidavit"), and (c) Brian Serotta, CPA dated March 11, 2005 (the "Serotta Affidavit"), all of which were submitted in opposition to BDO's motion to dismiss and all of which are included in the Record on Appeal.

aca/D251305v/F044278

## SUMMARY OF ARGUMENT

1.      BDO's appeal is based upon its demonstrably wrong assertion that New Jersey law is somehow applicable to this adversary proceeding despite **BDO's** inclusion of language in each of its engagement letters with Suprema (which BDO exclusively drafted) that specifically provides that any dispute between Suprema and BDO shall be resolved in accordance with **New York** law.  As the Bankruptcy Court correctly held, New York law, therefore, applies in this case, and thus BDO's motion to dismiss has no merit.  BDO is estopped by **its** choice of New York law from now arguing that the Trustee's complaint should be dismissed because of his alleged failure to comply with New Jersey Statute. In any event, New York law would apply to this litigation under ordinary conflicts-of-law rules.

2.      Even if BDO's engagement letters were somehow not controlling and New Jersey law in general applied to this matter, BDO's position that the New Jersey Statute mandates dismissal is unsupportable.  Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny, federal courts must enforce state *substantive* law, but when federal and state rules of *procedure* conflict, the court must abide by the federal rules. Here, the New Jersey Statute directly conflicts with the Federal Rules of Bankruptcy Procedure and, therefore, cannot and does not apply.  Furthermore, application of the New Jersey Statute would not have been outcome determinative, and thus it does not apply.

3.      Finally, even if the New Jersey Statute were to apply to this adversary proceeding, it is well established that there are exceptions to it.  First, extraordinary circumstances can excuse compliance with the Statute, and such circumstances plainly exist here.  Not only would a decision applying the New Jersey Statute here be the first time that the Trustee was apprised that the law of any state other than New York applies to any aspect of the Suprema bankruptcy, but it would also be the first time that the New Jersey Statute

7

was held to apply in **any** bankruptcy adversary proceeding in New York.  Second, the Trustee, in fact, substantially complied with the New Jersey Statute. He, his counsel, and one of his accounting experts, conducted two meetings with representatives of BDO prior to bringing this adversary proceeding, at which the Trustee's counsel and accountant outlined the basis for, and the merits of, the Trustee's claims against BDO.  Under these circumstances, even if the New Jersey Statute were deemed to apply here, the doctrine of substantial compliance, which has been consistently recognized by New Jersey courts, required the bankruptcy court to deny BDO's motion to dismiss.  Thus, this Court should affirm the Decision.

## ARGUMENT

### I.

### THE NEW JERSEY STATUTE IS IRRELEVANT BECAUSE BDO SPECIFIED NEW YORK LAW IN ITS ENGAGEMENT LETTERS WITH SUPREMA

Parties to a contract are free to designate New York law for the resolution of any dispute, so long as there is a reasonable basis for the choice.  *See Radioactive, J.V. v. Manson*, 153 F. Supp.2d 462 (S.D.N.Y. 2001); *Woodling v. Garrett Corp*, 813 F.2d 543 (2d Cir. 1987); *Aramony v. United Way of Am.*, 1998 U.S. Dist. LEXIS 5885 (S.D.N.Y. 1998); *Don King Productions v. Douglas*, 742 F. Supp. 741 (S.D.N.Y. 1990). As noted above, here, **BDO** chose to designate in its engagement letters that New York law would apply.  That choice is fully enforceable.

There is plainly a reasonable basis for BDO's choice of New York law to apply to the parties' multiple contracts over their seven (7) year business relationship.  Suprema was a New York corporation, and one of its subsidiaries operated in Ogdensburg, New York.  BDO

aca/D251305v/F044278

is a national and international accounting firm[10] with its main office in Chicago, Illinois and satellite offices and affiliates all over the country.[11] Its substantial New York presence consists of three BDO offices (one of which is located in New York City) and twenty-six alliance offices, ten of which are located in New York City. Furthermore, BDO's general counsel, who wrote BDO's engagement letters, is located in New York. Thus, BDO's choice of New York law is reasonable and enforceable.[12]

As discussed above, the engagement letters specify that "If any dispute, controversy or claim arises in connection with the performance or breach of this agreement . . ., then such dispute, controversy or claim shall be settled by arbitration *in accordance with the laws of the State of New York* and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association." Acampora Affidavit, Exhibits 1-4 (emphasis added). In response to the Trustee's straightforward, textual argument, BDO

---

[10]  BDO's website touts it as a "national professional services firm" that operates "through more than 35 offices and 250 independent alliance firm locations nationwide." There are only two BDO offices in New Jersey and six alliance offices. (*See* Exhibit 5 to the Acampora Affidavit). There is a serious question regarding whether BDO is the type of "professional" that needs the protections sought to be afforded to local New Jersey professionals by the New Jersey Statute. New Jersey's interest in protecting an international accounting firm from litigation by a New York bankruptcy trustee in a New York Bankruptcy Court arising out of the audit of a New York corporation with offices and facilities in New York, New Jersey, California and Idaho, is an issue that is not addressed by the New Jersey Statute and has not been addressed by any court.

[11]  In connection with audits of public companies such as Suprema, every BDO office, regardless of its location, is required to obtain a pre-release review by (a) BDO's *Regional* Technical Advisor of special reports including annual stockholders' reports (including Form 10-K), together with the Review Checklist noting any significant decisions and any supporting memoranda, and (b) BDO's *National* SEC Director for SEC filings and annual stockholders' reports (including Form 10-K), together with the Review Checklist noting any significant decisions and any supporting memoranda, before any SEC filings could be released.

[12]  Furthermore, because BDO has designated that New York would apply between at least 1994 and 2001, it is now equitably estopped from asserting that New Jersey law should apply to the Trustee's malpractice claims. *See e.g., Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 239 F. Supp. 2d 322 (S.D.N.Y. 2002).

relies on the affidavit of its general counsel to "explain" his "intentions" and "understanding" when he drafted BDO's choice of law provision.  BDO, through Univer, argues that the phrase "New York law" is meant only to cause New York procedural arbitration law to apply to any dispute.  That is **not** what the parties' engagement letters say; rather, they say that the laws of the State of New York shall apply to the resolution of any dispute that arises between the parties.

Furthermore, even if the parties' intentions were not entirely clear, at best, Univer's affidavit demonstrates that there is more than one reasonable interpretation of the parties' contracts.  That ambiguity does not favor BDO because any ambiguity in BDO's engagement letters must be construed against BDO as the drafter.  *See* Restatement 2d of Contracts, § 206 (1981); *Highland Mechanical Indus., Inc. v. Herbert Constr. Co., Inc.,* 216 A.D.2d 161, 628 N.Y.S.2d 655 (1st Dep't 1995); *Lai Ling Cheng v. Modansky Leasing Co.,* 73 N.Y.2d 454, 541 N.Y.S.2d 742 (1989).  Accordingly, if BDO's engagement letters are ambiguous on the choice of law issue, then those engagement letters must be construed against BDO so that, as the Bankruptcy Court found, New York law, rather than the New Jersey Statute, applies to this adversary proceeding.[13]

Finally, even if the parties' engagement letters were not interpreted to specify that New

---

[13]  In its reply on its dismissal motion, BDO argued in the Bankruptcy Court that, because certain third-party defendants moved to dismiss BDO's third-party complaints under the New Jersey statute of limitations, that was an acknowledgement that Suprema's management did not recognize a New York choice of law in BDO's engagement letters.  BDO neglected to advise the Bankruptcy Court that those third-party defendants sought dismissal of BDO's third-party complaints under the substantive law of *New York*.  In any event, the Trustee is neither bound by the legal maneuverings of third-party defendants nor do their tactics alter the language of BDO's engagement letters nor remove the ambiguity created by Univer's submission.  Similarly unavailing is BDO's suggestion that the language of its choice of law provision is sufficient to designate New York "procedural" law because of its "context" but insufficient to designate New York "substantive" law because *that* would require a special provision that *Univer* elected not to include in the engagement letters.  That argument verges upon the absurd.

aca/D251305v/F044278

York law applies to this litigation, it by no means follows that New Jersey law would apply. Rather, under a basic choice-of-law analysis, New York law would still be applicable here. New York law provides for an "interest analysis" in deciding choice-of-law questions, under which a court must decide "which jurisdiction, '"because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation'" *K.T. v. Dash*, 37 A.D.3d 107, 827 N.Y.S.2d 112 (1st Dep't 2006) (quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 477, 191 N.E.2d 279 (1963)). As discussed above, (a) Suprema is a New York corporation, (b) the officer of BDO that drafted the parties' contract is based in New York, and BDO has far more employees in New York than in New Jersey, and (c) Suprema's bankruptcy is pending in New York. Thus, New York has the superior interest in the resolution of this litigation.

Accordingly, the Decision should be affirmed.

## II.

### THE NEW JERSEY STATUTE WOULD STILL NOT APPLY TO THIS LITIGATION EVEN IF THIS CASE WERE NOT GOVERNED BY NEW YORK LAW

In the event the Court determines that BDO's choice of New York law should not be enforced, the New Jersey Statute should nevertheless not be applied to this case.

### A.    The New Jersey Statute Directly Conflicts With The Federal Rules And, Therefore, Cannot And Does Not Apply

Under *Erie* and its progeny, and in particular under *Hanna v. Plumer* 380 U.S. 460 (1965), federal district courts in diversity cases must apply state "substantive" law but generally apply federal "procedural" law. *See Hanna*, 380 U.S. at 472.[14]   Courts have

---

[14]    *Hanna* and *Erie* by their terms only apply to diversity cases in the federal district courts. This case, however, arises under the federal courts' bankruptcy jurisdiction rather than under federal diversity jurisdiction. *See In re Spanish Trails Lanes, Inc.,* 16 B.R. 304 (Bankr. D.

11

aca/D251305v/F044278

struggled with the characterization of whether a particular state law is "substantive" or "procedural" for *Erie* purposes. *See, e.g., Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Thus, in any *Erie* analysis, courts have held that the question to be determined is whether there is in fact a conflict between the state law that is arguably applicable and the federal rules that would otherwise govern; if there is such a conflict, then the federal rules of procedure govern. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980).[15]

There plainly is such a conflict in this case. At a minimum, Federal Rule of Bankruptcy Procedure 7026, which governs the initial disclosure of evidentiary matter, provides very specific guidelines regarding expert disclosures, and vests broad discretion in the federal courts to control discovery,[16] directly collides with the New Jersey Statute. The New Jersey law requires a substantially earlier "expert" disclosure with ostensibly mandatory, draconian consequences for the failure to do so. That purported "mandate" directly conflicts not only

---

Ariz. 1981) ("[T]he bankruptcy courts fall squarely within the ... exception to the general rule that state law controls."); *Lange v. Farmers Federation Cooperative, Inc.*, 249 F. Supp. 544, 546 (W.D.N.C. 1966); *In re Comstock*, 16 B.R. 206 (Bankr. D. Idaho 1981). Accordingly, there is an issue regarding the application of the *Erie* doctrine in this case. In any event, BDO's citation to *In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001) is inapposite because that case did not involve a contractual choice of law provision that its sole drafter sought to abrogate.

[15] For *Erie* purposes, the Federal Rules of Civil Procedure should not be "narrowly construed in order to avoid a 'direct collision' with state law. The Federal Rules should be given their plain meaning." *Walker v. Armco Steel Corp.*, 446 U.S. at 750.

[16] Federal Rule of Bankruptcy Procedure 7026 provides, in pertinent part, that expert "disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party."

aca/D251305v/F044278

with Federal Rules of Bankruptcy Procedure 7026 but also with Rules 7037 and 9011[17]

because it provides for non-discretionary penalties that are simply not available under either

the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure. *See*

*Poindexter v. Bonsukan*, 145 F. Supp.2d 800 (E.D. Tex. 2001).

The direct conflict between the New Jersey Statute and similar statutes with the

federal rules governing expert disclosure has been recognized by various federal courts and

at least one New Jersey jurist. For example, in *Poindexter*, the district court determined that

a Texas statute, which was virtually identical to the New Jersey Statute,[18] directly conflicted

with Federal Rule of Civil Procedure 26 and generally impeded upon the broad discretion

vested in federal courts by the Federal Rules of Civil Procedure. The court found that the

mandatory timing, content, and sanction provisions of the Texas statute abrogated the judicial

discretion provided by the Federal Rules of Civil Procedure. It explained that the Texas

statute and the Federal Rules of Civil Procedure were coextensive because both sought to

penalize frivolous litigation. It found, however, that the Texas statute so "impinge[d] on the

broad procedural powers" of the federal courts that it must yield to the "federal scheme." 145

F. Supp.2d at 807. Not only did the federal and state rules differ on the content of expert

reports but, more importantly, the Texas statute also abrogated the discretion afforded to the

federal judiciary to determine the appropriate sanction for non-compliance. As the *Poindexter*

court explained:

---

[17] Federal Rule of Bankruptcy Procedure 9011 empowers the Court with significant discretion to determine and assess appropriate sanctions in the event of a violation provided that "the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons."

[18] The Texas statute required plaintiffs to file one or more expert reports for each defendant physician no later than 180 days after the date on which a health care liability action was filed and meet certain content requirements. Failure to comply with the Texas statute left the Texas courts with no discretion and mandated the dismissal of the action with prejudice.

aca/D251305v/F044278

Whereas the federal rules adopt a case-by-case approach to discovery of experts and "to identifying and deterring frivolous appeals, [the statute] precludes any exercise of discretion within its scope of operation. The federal rules thus occupy the state statute's field of operation so as to preclude its application in federal diversity actions. [The statute's] mandatory approach, providing a trial court with little discretion ... cannot apply in federal court.

Second, the timing provisions in [the statute] directly collide with the discretionary power vested in the federal court . . . If a plaintiff fails to comply with this [statute] and the defendant files a motion seeking sanctions, a trial court has no discretion and must enter an order dismissing the case with prejudice . . . Thus the discretion provided in the federal rule is wiped out by the state rule.

145 F. Supp. 2d at 807; *see also Serocki v. Meritcare Health Sys.*, 312 F. Supp.2d 1201

(D.N.D. 2004) (holding that the expert affidavit requirement conflicts with Fed. R. Civ. P. 26);

*McDaniel v. United States of America*, 2004 U.S. Dist LEXIS 23196 (W.D. Tex. Nov. 14,

2004) (although the purpose of the Texas statute is to inform a malpractice defendant of the

conduct and determine the viability and merit of the plaintiff's claim, those purposes can be

accomplished through other means in the federal system, including Federal Rule of Civil

Procedure 11).[19]

Simply stated, the basic underpinnings of the Federal Rules of Civil Procedure and the

Federal Rules of Bankruptcy Procedure is to afford broad discretion to the federal courts in

virtually every aspect of a case, and **especially** with regard to such matters as discovery

disclosures and sanctions such as the dismissal of litigation.

Indeed, in his dissent and concurrence in *Ferreira*, a case in which the New Jersey

---

[19]  Research has not revealed any case that refers to Federal Rule of Civil Procedure 26(b)(4) which specifically *prohibits* a party from obtaining facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness *unless* the party seeking such disclosure can show exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means. Clearly, the mandatory disclosure requirement of the New Jersey Statute is also in direct conflict with that Federal Rule that specifically prohibits such disclosure except under extraordinary circumstances.

14

Supreme Court held that substantial compliance with the expert-affidavit requirement can suffice, Justice Long argued that the New Jersey Statute similarly conflicted and improperly interfered with the independence of the *New Jersey* judiciary.  According to Justice Long, dismissal with prejudice should be limited to those cases in which the plaintiff cannot or will not provide an affidavit of merit.  He reasoned that trial judges can assess the facts and be permitted to apply the appropriate discretionary remedies available to them.  He concluded that

> The availability of sanctions short of dismissal with prejudice would align the [New Jersey Statute] procedure with R. 4:37-2(a) for the first time since the statute was enacted.  Moreover, it would provide judges with a response that is proportionate to most procedural violations and also would serve to save for trial the meritorious cases of injured victims of malpractice.  Nothing in the statute itself precludes such an approach....
>
> * * *
>
> Stare *decisis* operates to control change, not to prevent it....  [T]he doctrine does not require us "to adhere blindly to rules that have lost their reason for being." ... The broad mandatory dismissal with prejudice language of *Cornblatt* falls into that category. Until it is modified, we will be required to continue on our course of painstakingly deconstructing the facts in every single [New Jersey Statute] case in order to find some basis on which to escape *Cornblatt* and achieve a just result. *Stare decisis* does not require that of us.

178 N.J. at 158.

Nevertheless, BDO argues that the sanction imposed by the New Jersey Statute is ostensibly mandatory, non-discretionary, and appropriate.  Its position urges a result that directly conflicts with both the spirit and express content of the Federal Rules of Bankruptcy Procedure.  Federal Rules of Bankruptcy Procedure 7026 and 9011 are sufficiently broad to encompass the issues sought to be protected by the New Jersey Statute and are controlling for *Erie* purposes.[20]  Thus, the New Jersey Statute cannot be applied to the instant adversary

---

[20]  Although in *RTC Mortgage Trust v. Fidelity Nat'l Title Ins. Co.*, 981 F.2d 334 (3d Cir. 1997), the Third Circuit found in a perfunctory fashion and without any real analysis that the

aca/D251305v/F044278

proceeding.[21]

## B.    The New Jersey Statute Is Not
## Outcome Determinative And Thus Does Not Apply

BDO's argument under the New Jersey Statute also fails because, under *Erie*, diversity courts employ an "outcome-determination" analysis. *See Guaranty Trust Co. v. York*, 326 U.S. 99 (1944); *Walker*, 446 U.S. at 747.  Under that analysis, a district court need not apply state law that is not outcome determinative.

*Snyder v. Pascack Valley Hospital*, 303 F.3d 271 (3d Cir. 2002) as well as a variety of recent New Jersey state court decisions, demonstrate that the New Jersey Statute is neither substantive nor outcome determinative.  In *Snyder*, the Third Circuit observed that, although the New Jersey Statute appears clear by its text, courts have encountered a host of problems in applying that law, which have engendered numerous appeals.  *Id.* at 273-74. The court surveyed the various New Jersey cases that "eschew[ed] an overly restrictive view" of the New Jersey Statute, and "undertook to fill the gaps in the statute" by reference to the act's legislative objectives—and in particular so that meritorious claims could proceed unhindered. *Id. at 274. Snyder* recognized those New Jersey courts rejected a "wooden view" of the New

---

New Jersey Statute may "co-exist" with Federal Rule of Civil Procedure 11 because "the two operate in substantially different fashions, such that it cannot reasonably be said that there is a conflict between them", in view of the broad discretion afforded to federal courts and the mandatory nature of the New Jersey Statute, that reasoning lacks any rational basis. Moreover, unlike other jurisdictions with virtually identical statutes, and contrary to BDO's sweeping statements that the Third Circuit has held that the New Jersey Statute does not conflict with the Federal Rules, no court in New Jersey has considered whether the New Jersey Statute directly conflicts with Federal Rule of Bankruptcy Procedure 7026.

[21]    The New Jersey Statute also directly conflicts with New York CPLR §3012-a, which provides for a certificate of merit, executed by an attorney, only in medical, dental and podiatric malpractice cases.  Not only is CPLR §3012-a more limited in scope than the New Jersey Statute, but, like Federal Rule of Bankruptcy Procedure 9011, it accepts an attorney's certification regarding the merits and unlike the New Jersey Statute, there is no "mandatory" dismissal for noncompliance. *See Kolb v Strogh*, 158 A.D.2d 15, 558 N.Y.S.2d 549 (2d Dep't 1990) (the statute may only be enforced indirectly by court as failure to comply with a discovery order).

aca/D251305v/F044278

Jersey Statute and regularly applied either the doctrine of "extraordinary circumstances" or the doctrine of "substantial compliance" to remedy any procedural defects that would otherwise defeat a meritorious claim. *Id.* at 274-75.

Other cases, decided both by New Jersey courts and by federal courts interpreting the New Jersey Statute, have followed suit and found ***numerous*** exceptions to excuse non-compliance with the New Jersey Statute. *See, e.g., Newell v. Ruiz*, 286 F.3d 166 (3d Cir. 2002); *Burns v. Belafsky*, 166 N.J. 466 (2001); *Hefferon v. Gitler*, 346 N.J. Super. 141 (App. Div. 2001); *Fernandez v. Jersey City Medical Ctr.*, 336 N.J. Super. 594 (App. Div. 2001); *Zamft v. Cornell*, 309 N.J. Super. 586 (App. Div. 1998).[22]

If the New Jersey Statute were substantive and binding in its application, New Jersey courts (as well as the Third Circuit) would have been hard pressed to craft so many separate exceptions to that law, such that the spirit of the law has all but replaced its letter. These decisions demonstrate that the New Jersey Statute is not, in fact, outcome determinative – and, therefore, can safely be ignored by federal courts. Accordingly, the Decision should be affirmed.

## III.

### DISMISSAL STILL WOULD NOT HAVE BEEN APPROPRIATE
### EVEN IF THE NEW JERSEY STATUTE DID APPLY TO THIS LITIGATION

This case is governed by New York law, not New Jersey law, and even if New Jersey law generally governed this case the New Jersey Statute would not apply. BDO's appeal, however, fails for a third reason. Even if the New Jersey Statute applied here, the bankruptcy court would still have been correct in not granting BDO's motion to dismiss because

---

[22] These significant recent decisions that have interpreted the New Jersey Statute to have a procedural rather than substantive application demonstrate that any reliance upon the Third Circuit's previous decision in *RTC* to the contrary is unavailing.

aca/D251305v/F044278

extraordinary circumstances exist such that New Jersey courts would have excused compliance with the New Jersey Statute and because the Trustee, in fact, substantially complied with the New Jersey Statute, which New Jersey courts have held can suffice.

**A.      The Extraordinary Circumstances Present Here
        <u>Would Excuse Compliance With The New Jersey Statute</u>**

New Jersey courts have consistently exercised their equitable authority to avoid the inequitable application of the New Jersey Statute. It is "proper for a court to apply equitable principles to determine whether extraordinary circumstances exist and/or to find that substantial compliance with the affidavit of merit statute has been demonstrated." *Hefferon v. Gitler*, 346 N.J. Super. 141, 145, 787 A.2d 222 (2001). The common sense application of the New Jersey Statute requires that it should not be strictly applied so as to eviscerate a meritorious claim on a mere technicality. *Id.* at 146-49. Consequently, and to Justice Long's consternation, New Jersey courts engage in a fact-sensitive inquiry to determine whether "extraordinary circumstances" exist so as to explain and to relax the "so-many-day filing requirement of a rule or statute." *Zamft v. Cornell*, 309 N.J. Super. 586, 593-95, 707 A.2d 1068 (1998).

In this case, BDO's own engagement letters designate New York law as controlling its relationship with Suprema. BDO now seeks to renege on that contractual agreement to take advantage of a technicality in the New Jersey Statute. Research has not uncovered a single case in which the New Jersey Statute was applied in derogation of a valid, contractual choice of law provision—but has uncovered several cases in which a choice of law or similar provision *excused* strict compliance with the New Jersey Statute and similar legislation.

For example, in *Serocki v. Meritcare Health Sys.*, 312 F. Supp. 2d 1201 (D.S.D. 2004), the court concluded that strict compliance with a North Dakota statute similar to the New Jersey Statute would have been inequitable when there was a disagreement between the

aca/D251305v/F044278

parties regarding applicable substantive state law. The Court held:

> It is worth noting that mandatory dismissal is an exceptionally harsh measure in a case of this nature. Plaintiff brought the suit in South Dakota, obviously assuming that South Dakota law would apply.... Whether plaintiff was correct or not as to the applicability of South Dakota substantive law, at no point prior to the expiration of the three month period prescribed by [the North Dakota statute] did the court announce that the action was governed by North Dakota law. Consequently, it would be a draconian measure to dismiss plaintiff's action for allegedly failing to comply with a law that neither party knew was applicable. This is especially true here, where the issue of which law applies has been hotly contested by both parties from the onset.

*Id.* at 1211; *see also Newell v. Ruiz*, 286 F.3d 166, 171 (3d Cir. 2002) (dismissal of a case originally filed in New York and transferred to New Jersey after the time to comply with the New Jersey Statute had expired would "lead to results inconsistent with the overall purpose of the statute.").

The observations of these courts are equally applicable here. It would be inequitable and draconian to dismiss the Trustee's complaint without even an opportunity to comply with the New Jersey Statute because it was not until BDO made its dismissal motion that there was even a **suggestion** that New Jersey law, rather than the New York law designated by BDO's engagement letters, might govern this adversary proceeding.[23] Indeed, the numerous legal hurdles that BDO would be required to avoid before the Court could find that New Jersey law applies to the instant adversary proceeding themselves constitute extraordinary circumstances that warrant relief from non-compliance with the New Jersey Statute. Any other result would be unduly harsh and wholly inequitable.[24]

---

[23]    New Jersey courts have found that the defendant's failure to assert the applicability of the New Jersey Statute can be evidence to support excusing strict compliance therewith. *See e.g., Zamft v. Cornell*, 309 N.J. Super. 586, 593, 707 A.2d 1068 (1998).

[24]    Procedurally, because of the pending dismissal motions to BDO's third party complaints, issue has not been completely joined in this case. The joinder of issue may necessitate an amendment to the Trustee's complaint or, in the event that claims are brought against Suprema's estate by the third party defendants, additional pleadings by the Trustee either of

aca/D251305v/F044278

**B.**    <u>The Trustee Has Substantially Complied With The New Jersey Statute</u>

The doctrine of substantial compliance is used "to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose . . . It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims." *Galik v. Clara Maass Medical Ctr.*, 167 N.J. 341, 771 A.2d 1141 (2001) (citations omitted). Here, the Trustee has substantially complied with the New Jersey Statute.

Substantial compliance requires a plaintiff to satisfy the following considerations: (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of the claim; and (5) a reasonable explanation why there was not strict compliance with the statute. *Id* at 353. "Satisfying those elements guarantees that the underlying purpose of the statute is met and that no prejudice is visited on the opposing party. In each case, the Court is required to assess the facts against the clearly defined elements to determine whether technical non-conformity is excusable." *Id*. at 353-54.

In *Galik*, the plaintiff forwarded an expert report to the insurance carriers for the defendants prior to commencement of the action, demanding a "global settlement" and threatening litigation. Plaintiff did not file an affidavit of merit or move for an extension within 120 days after answers were filed by certain of the defendants, and the complaint was dismissed under the New Jersey Statute. On appeal, the New Jersey Supreme Court

---

which would begin the time to comply with the New Jersey Statute. Moreover, a finding by this Court that New Jersey law, rather than the contractually agreed-upon New York law, applies to the Trustee's claims would *require* an amendment of the complaint by the Trustee to insure that his malpractice claims state claims under the newly applicable New Jersey substantive law. The Trustee's time to comply with the New Jersey Statute would not begin to run until *after* BDO filed its answer to the amended complaint.

aca/D251305v/F044278

reinstated the complaint and, relying upon prior decisions, held that the legislative history of the New Jersey Statute did not exclude the "highly just doctrine of substantial compliance which is so well designed to avoid technical defects of a valid claim." As the court explained, "[o]ur authorities are uniform to the effect that technical accuracy is not required. Substantial compliance suffices. There was no intention on the part of law makers that such a statute should be used as a stumbling block or pitfall to prevent recovery by meritorious claimants." *Id.* at 352. The pre-suit report and letters, which formed the basis of settlement negotiations before the action was commenced, constituted substantial compliance with the New Jersey Statute.

In this case, the facts conspicuously omitted from BDO's moving and appellate presentation clearly establish substantial compliance with the New Jersey Statute. First, as demonstrated by the affidavits of Acampora, Silverman, and Serotta, on or about April 16, 2003 (prior to the commencement of the adversary proceeding), Silverman, as Trustee, Acampora, and Ronald J. Friedman, Esq. ("Friedman"), as Trustee's counsel, and Serotta, as the Trustee's accountant from one of the two accounting firms assisting the Trustee and counsel with the claims against BDO, met with (a) BDO's general counsel, Univer, (b) a member of BDO's board of directors, (c) two high ranking members of BDO's quality assurance group, and (d) Alfred J. Lechner, Jr., Esq. ("Lechner") of Morgan Lewis & Bockius LLP, BDO's former counsel. During that meeting, which lasted for several hours, Acampora and Serotta outlined (a) the nature and extent of their investigation into BDO's audit based upon their analysis of BDO's audit workpapers for the years 1994 through 2001, (b) the nature and extent of the deficiencies in BDO's audits for all applicable periods, and the likelihood that the care, skill, or knowledge exercised by BDO did not comply with auditing standards generally accepted in the United States, (c) the nature and extent of the Trustee's

aca/D251305v/F044278

claims against BDO, and (d) the Trustee's desire to expeditiously complete his investigation and either reach an amicable resolution of his claims or commence litigation.[25]  During that meeting, BDO's representatives questioned Acampora and Serotta regarding their investigation and the claims against BDO.  Indeed, Acampora and Serotta highlighted certain of the audit procedures that were overlooked, omitted, or inadequately performed by BDO. Subsequent to the April 16, 2003 meeting, on June 25, 2003 (again, prior to the commencement of the adversary proceeding), Acampora and Friedman again met with Lechner and Univer to continue their discussions.

Thereafter, Edwards & Angell LLP was substituted for Morgan Lewis & Bockius LLP as BDO's counsel.  By stipulation dated February 24, 2004, BDO and the Trustee tolled any applicable statute of limitations so that the Trustee and his counsel could conclude their "detailed analysis of the relationship between Suprema and BDO...."

The foregoing facts clearly establish that the Trustee has substantially complied with

---

[25]  Federal Rule of Evidence 408 "is not an absolute ban on all evidence regarding settlement negotiations." *Care Envtl. Corp. v. M2 Techs., Inc.*, 2006 U.S. Dist. LEXIS 2934 (E.D.N.Y. 2006).  It specifically permits the admission of settlement negotiation evidence when it is presented for a reason other than demonstrating liability, including but not limited to proving bias, prejudice of a witness, and undue delay. Fed. R. Evid. 408.  *See United States v. Gonzalez*, 748 F.2d 74, 78 (2d Cir. 1984); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999); *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) ("a trial court has broad discretion as to whether to admit evidence of settlement negotiations offered for 'another purpose.'  Absent an abuse of discretion 'amounting to manifest error,' we are not apt to reverse a district court's determination as to whether proffered evidence of settlement negotiations comes within this exception to Rule 408."); *Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 484 (7th Cir. 2000); *Agan v. Katzman & Korr, P.A.*, 328 F. Supp.2d 1363, 1371 (D. Fla. 2004); *U.S. v. Hauert*, 40 F.3d 197, 199-200 (7th Cir. 1994) (to show defendant's knowledge and intent); *Freidus v. First Nat'l Bank*, 928 F.2d 793, 795 (8th Cir. 1991) (for rebuttal).  In this case, the Trustee does not offer evidence of the settlement negotiations to establish BDO's liability.  Rather, the sole purpose for his reference to the settlement meetings is to establish that they occurred and that, as in *Galik* and in *Fink v. Thompson*, 167 N.J. 551, 564, 772 A.2d 386 (2001), the Trustee undertook a series of steps to comply with the statute, generally complied with the purpose of the statute, and provided BDO with reasonable notice of the claim, thereby substantially complying with the New Jersey Statute.

aca/D251305v/F044278

the New Jersey Statute. First, BDO cannot establish that it would suffer any prejudice by a determination that the Trustee has substantially complied with the belatedly applicable New Jersey Statute "other than that [it] would have to defend against a potentially meritorious claim, which is not legal prejudice." *See Galik* 167 N.J. at 356-57 ("Indeed, one might argue that it was plaintiff who was prejudiced where . . . defendants relied on pre-complaint reports to engage in settlement efforts . . . and then, without warning, moved to dismiss for failure to file and affidavit of merit."). Second, the numerous meetings and the stipulation tolling the statute of limitations all indicate that the Trustee, his counsel and his accountants (a) had taken steps to determine that the claims against BDO were well-founded and meritorious, and (b) had taken steps that can easily be construed as generally complying with the New Jersey Statute by sharing that information with BDO thereby providing more than reasonable notice of the Trustee's claims to BDO. Moreover, the meetings between BDO and the Trustee, together with the Trustee's 86 page, 467 paragraph, detailed complaint, amply demonstrate that BDO was on notice of the Trustee's claims against it.[26] Finally, as discussed above, the Trustee has demonstrated a reasonable basis for the absence of strict compliance with the New Jersey Statute based upon his reasonable (and continuing) presumption that New York law governs this case, as set forth in the engagement letters and as recognized by the Bankruptcy Court.

Based upon all of the foregoing, the Trustee's actions, as acknowledged and participated in by BDO, constitute substantial compliance sufficient to deny BDO's motion to

---

[26] In both *Galik* and *Fink*, the plaintiffs took a series of steps that notified the defendants about the merits of the malpractice claims filed against them that was sufficient to substantially comply with the New Jersey Statute. BDO's suggestion that extensive face-to-face meetings with attorneys and experts are not a substitute for a one page "affidavit of merit" exalts form over substance and warrants no serious consideration.

aca/D251305v/F044278

dismiss the Trustee's complaint because of lack of strict compliance with the New Jersey Statute.

## **CONCLUSION**

For all of the foregoing reasons, the Bankruptcy Court's Decision denying BDO's motion to dismiss was proper, and the Decision should be affirmed in its entirety.

Dated: Jericho, New York
      September 12 2007

**Silverman Perlstein & Acampora LLP**
Attorneys for Kenneth P. Silverman, Esq.,
The Chapter 7 Trustee

By:     _____

Anthony C. Acampora (# 0838)
Jay S. Hellman (#6038)
A Member of the Firm
100 Jericho Quadrangle
Jericho, New York 11753
(516)479-6300

24

aca/D251305v/F044278